Stephen R. Hackett, Esq.
Nevada Bar No.: 5010
David B. Barney, Esq.
Nevada Bar No.: 14681
SKLAR WILLIAMS PLLC
410 South Rampart Boulevard, Suite 350
Las Vegas, Nevada 89145
Telephone: (702) 360-6000
Facsimile:  (702) 360-0000
Email: shackett@sklar-law.com
          dbarney@sklar-law.com
*Attorneys for Plaintiff*
*CC Technology Corporation*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CC TECHNOLOGY CORPORATION, a Colorado corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHIVA PRAKASH, an individual; HANNAH DAWN PRAKASH, in an individual capacity and as Trustee of Capital Pure Assets, Ltd, a dissolved Nevada limited liability company; SHIVAHI PRAKASH, as Trustee of Capital Pure Assets, LTD, a dissolved Nevada limited liability company; VIKHYAT PRAKASH, an individual; DGITK LLC, a Delaware limited liability company; JAMES CHRISMAN, P.C., a Nevada professional corporation; JAMES P. CHRISMAN, an individual; DOES 1 through 10, inclusive; and ROE ENTITIES I through X, inclusive,<br><br>Defendants. | Case No.<br><br><br>**COMPLAINT** |

Plaintiff CC Technology Corporation, by and through its counsel of record, the law firm of Sklar Williams PLLC, as and for its Complaint alleges as follows:

## THE PARTIES

1.    Plaintiff CC Technology Corporation ("Plaintiff" or "CCTC") is, and at all times herein relevant was, a Colorado corporation with its principal place of business in Illinois.

1

2. Defendant Shiva Prakash ("Shiva") is, and at all times herein relevant was, an individual residing in Clark County, Nevada.

3. Defendant Hannah Dawn Prakash ("Hannah") is, and at all times herein relevant was, an individual residing in Clark County, Nevada. Hannah was a Manager of Capital Pure Assets, Ltd ("Capital Pure"), a dissolved Nevada limited liability company, at the time of its dissolution on April 10, 2025. Therefore, she remains a Trustee of the dissolved company under NRS 86.541(2).

4. Defendant Shivahi Prakash ("Shivahi") is, and at all times herein relevant was, an individual residing in Clark County, Nevada. Shivahi was a Manager of Capital Pure at the time of its dissolution on April 10, 2025. Therefore, she remains a Trustee of the dissolved company under NRS 86.541(2).

5. Defendant Vikhyat Prakash ("Vikhyat") is, and at all times herein relevant was, an individual residing in Clark County, Nevada.

6. Defendant DGITK LLC ("DGITK") is, and at all times herein relevant was, a Delaware limited liability company with its principal place of business in Las Vegas, Nevada.

7. Defendant James Chrisman, P.C. ("Chrisman, P.C.") is, and at all times herein relevant was, a Nevada professional corporation with its principal place of business in Las Vegas, Nevada.

8. Defendant James P. Chrisman ("Chrisman") is, and at all times herein relevant was, an individual residing in Clark County, Nevada.

9. The true names and capacities, whether corporate, individual, or otherwise, of Defendant Does 1 through 10, inclusive, and Roe Entities I through X, inclusive, are unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Plaintiff is informed and believes, and thereon alleges, that each Defendant designated as a Doe and Roe Entity is legally responsible in some manner or means for the damages to Plaintiff, as alleged herein, either through its contractual duty, conduct, or through the conduct of its agents, employees or insurers, which resulted in injury and damages to Plaintiff as alleged herein. Plaintiff will ask for leave of Court to amend this Complaint to insert the true names and capacities of said Defendant Does 1 through

2

10, inclusive, and Roe Entities I through X, inclusive, when the same have been ascertained by Plaintiff, together with the appropriate charging allegations, and to join said Defendant(s) in this action.

### JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332, because complete diversity of citizenship exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1), because all of the Defendants reside in Clark County, Nevada. Venue is also proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to this action occurred in this District. Furthermore, the operative contract between the parties requires that disputes arising therefrom be brought in this Court.

### GENERAL ALLEGATIONS

**A.    Defendants' Standby Letter of Credit Scheme.**

12. This matter arises from a Standby Letter of Credit Scheme carried out by the Defendants against CCTC.

13. In or around May 2023, Defendants represented to CCTC that they have a reputable business in Capital Pure and connections to the financial industry, including access to significant funds from their clients' family offices in India. Defendants further represented that they could obtain a Standby Letter of Credit ("SBLC") in the amount of $50 million, provided that CCTC first deposits $336,000 into an escrow account held by Chrisman and Chrisman, P.C., to pay the bank fees associated with the SBLC.

14. The parties reduced these terms to a written contract, in which CCTC agreed to deposit $336,000 into an escrow account held by Chrisman and Chrisman, P.C., and in exchange, Capital Pure would provide CCTC with funding in the amount of $20 million, as well as a SBLC in the amount of $50 million, for CCTC to develop and expand its business. The contract had certain timeframes in which Capital Pure was required to provide funding after CCTC deposited the payment of $336,000 into the escrow account.

15. On or about July 3, 2023, Capital Pure deposited $336,000 into the purported escrow account designated by Defendants, to be used to pay the bank fees associated with the SBLC.

16. Notwithstanding CCTC's payment, however, Defendants failed or refused to comply with their obligations to deliver the funding or the SBLC, and CCTC made several demands for their compliance with the terms of the parties' agreement or, at the very least, Defendants' return of the escrow deposit of $336,000.

17. On March 28, 2024, CCTC, through counsel, sent a final demand for Defendants' return of the escrow funds, and to resolve the parties' disputes in their entirety before CCTC would have no choice but to file suit against them.

**B.    Defendants File a Meritless Lawsuit, and CCTC Asserts Counterclaims in Connection with the SBLC Scheme.**

18. On April 8, 2024, apparently believing the best defense is filing a lawsuit fitst, Capital Pure filed a lawsuit against CCTC, styled as *Capital Pure Assets, Ltd. v. CC Technology Corporation*, Case No. 2:24-cv-00680 in the United States District Court for the District of Nevada (hereinafter, the "Lawsuit").

19. On June 17, 2024, CCTC filed an Answer and Counterclaimant in the Lawsuit (the "Counterclaim"), in which it denied the allegations made against it by Capital Pure and added the following parties as Counter-defendants in the Lawsuit: (i) Capital Pure; (ii) Shiva; (iii) Hannah; (iv) Vikhyat; (v) Chrisman, P.C.; and (vi) Chrisman.  CCTC asserted the following claims for relief in the Counterclaim: (a) Fraud against Capital Pure, Shiva, Hannah, and Vikhyat, (b) Deceptive Trade Practices/Consumer Fraud against Capital Pure, Shiva, and Hannah, (c) Breach of Contract against Capital Pure, Shiva, and Hannah, (d) Breach of the Implied Covenant of Good Faith and Fair Dealing against Capital Pure, Shiva, and Hannah, (e) Breach of Contract against Chrisman, P.C., (f) Breach of the Implied Covenant of Good Faith and Fair Dealing against Chrisman, P.C., (g) Breach of Fiduciary Duty against Chrisman and Chrisman, P.C., and (h) Civil Conspiracy, (i) Conversion, (j) Unjust Enrichment, and (k) Declaratory Relief against Capital Pure, Shiva, Hannah, Vikhyat, Chrisman, P.C. and Chrisman.

4

20.    On September 24, 2024, after CCTC filed a Motion for Preliminary Injunction requesting that the Court require Defendants to deposit the escrow amount of $336,000 (the "Escrow Funds") with the Court, the Court granted that motion and required such amount to be deposited with the Court for safekeeping during the pendency of the Lawsuit.  Defendants deposited the Escrow Funds with the Court in accordance with the Court's orders, notwithstanding the fact that they admitted they spent the original funds and would have to come up with the amount from another source to comply with the Court's orders.

21.    After Defendants deposited the Escrow Funds with the Court, the parties had extensive negotiations regarding settlement for several months, until they came to a finalized, written agreement.

**C.    The Parties Enter into a Settlement Agreement to Resolve the Lawsuit, and Defendants Immediately Breach It.**

22.    On or about February 19, 2025, the Parties in the Lawsuit entered into a Mutual Release and Settlement Agreement (the "Settlement Agreement"), to fully settle and resolve all claims that were brought, or which could have been brought, between them in the Lawsuit.  The basic terms of the Settlement Agreement were that the parties would drop their claims in the Lawsuit and release each other from liability in connection with the same, and in exchange, the "Counter-defendants," as defined in the Settlement Agreement, agreed to pay CCTC a total sum of $1,336,000 over time.  The Settlement Agreement defined the term "Counter-defendants" as Capital Pure, Shiva, Hannah, Vikhyat, Chrisman, P.C., and Chrisman.  A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit 1**.

23.    Regarding the Counter-defendants payment obligations, Section 2 of the Settlement Agreement provides as follows:

> **Payment from Counter-defendants.**  In consideration of the Recitals, terms and other covenants and conditions set forth herein, the Counter-defendants shall pay to CCTC a total sum of One-Million-Three-Hundred-Thirty-Six-Thousand Dollars ($1,336,000.00) (the "**Settlement Amount**").

24.    Section 2 of the Settlement Agreement provides additional terms regarding the Counter-defendants' payment of the Settlement Amount, including that the Counter-defendants

would pay an initial amount of $14,000 concurrently upon their execution and delivery of the Settlement Agreement, and that they would stipulate to the Court's release of the Escrow Funds held in the Court registry to CCTC, concurrently with the parties' dismissal of the case.

25.    Thereafter, the Counter-defendants were required to make quarterly payments under Section 2(c) of the Settlement Agreement, as follows:

> Beginning on April 1, 2025, and continuing for a period of twenty-one months thereafter, the Counter-defendants shall make eight (8) quarterly payments to CCTC in the amount of One-Hundred-Twenty-Three-Thousand-Two-Hundred-Fifty Dollars ($123,250.00) (each, a "**Quarterly Payment**"), until the Settlement Amount is paid in full.  For the avoidance of doubt, the Quarterly Payments shall be made on the following dates: (i) April 1, 2025; (ii) July 1, 2025; (iii) October 1, 2025; (iv) January 1, 2026; (v) April 1, 2026; (vi) July 1, 2026; (vii) October 1, 2026; and (viii) January 1, 2027.

26.    While all of the Counter-defendants are obligated to pay the Settlement Amount in accordance with the terms of the Settlement Agreement, Capital Pure and Shiva also agreed to sign a Confession of Judgment as part of the settlement ("Confession of Judgment").  This provided CCTC with an expedited procedure to obtain a judgment against Capital Pure and Shiva, whereas it would have to pursue a breach of contract case against the remaining Counter-defendants if they failed to pay the Settlement Amount.  A true and correct copy of the Confession of Judgment is attached as Exhibit B to the Settlement Agreement.

27.    Section 2(h) of the Settlement Agreement provides that if Capital Pure and Shiva fail to make any Quarterly Payment due under the Settlement Agreement, and their failure to do so continues for thirty (30) days after CCTC provides them with notice of their default, CCTC may file the Confession of Judgment in the amount of $986,000, less any Quarterly Payments made before the Confession of Judgment is filed.

28.    From the outset of the parties' settlement, the Counter-defendants have done everything possible to try to escape their obligations under the Settlement Agreement.  This includes a failure to pay the initial $14,000 required under the Settlement Agreement, until the Magistrate Judge in the Lawsuit found them in contempt and advised that she would have them arrested if they did not pay promptly.

29.    Only upon this threat being issued did the Counter-defendants comply with the

most basic requirements of the Settlement Agreement, which triggered dismissal of the underlying Lawsuit and left the Counter-defendants with their post-dismissal payment obligations, i.e., the obligation to make each Quarterly Payment. But once again, the Counter-defendants—who are Defendants in this matter—have completely failed to comply with their obligations under the Settlement Agreement.

30. By way of example, April 1, 2025, came and went, and while the Counter-defendants were required to make the first Quarterly Payment on that date, they failed or refused to do so.

31. On April 2, 2025, CCTC gave notice to the Counter-defendants of their default in payment, as required before filing the Confession of Judgment against Shiva and Capital Pure.

32. Thirty days passed since CCTC provided such notice as required under the Settlement Agreement, and the Counter-defendants have failed to cure their default in payment or make a single one of the Quarterly Payments due.

33. In addition to the Defendants' continuing breach of the Settlement Agreement, they have engaged in a fraudulent transfer of Capital Pure's assets and business, in an unlawful attempt to avoid liability under the Settlement Agreement. In particular, they dissolved Capital Pure on April 10, 2025, not even two months after they entered into the Settlement Agreement and Capital Pure executed the Confession of Judgment. This, notwithstanding the fact that Defendants acknowledged at the time that Capital Pure was still engaged in business, i.e., soliciting investments from third parties.

34. CCTC has now discovered that the Defendants formed DGITK just four days after dissolving Capital Pure, to run the same business in an effort to defraud CCTC as a significant creditor and evade liability under the Settlement Agreement. According to the DGITK website, its purported address is the same UPS Store previously identified by Capital Pure as its office location. Furthermore, the DGITK website uses the same vague reference to services allegedly provided by the company that Capital Pure did, and which CCTC is informed and believes serves as a guise to defraud potential investors.

35. Without another option at this stage, CCTC files this lawsuit to be made whole in

7

light of Defendants' conduct outlined above.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract – against Shiva, Hannah, Shivahi, Vikhyat, Chrisman, P.C., and Chrisman)

36.     CCTC repeats, realleges, and incorporates by this reference each and all of the allegations contained in Paragraphs 1 through 35 of this Complaint, as if fully set forth herein.

37.     The Settlement Agreement is a valid and binding contract between CCTC, on the one hand, and the above-named Defendants—identified as "Counter-defendants" in the contract—on the other hand.

38.     CCTC has performed all conditions, obligations, and covenants required under the Settlement Agreement, or has been excused from performing such conditions, obligations, and covenants.

39.     Shiva, Vikhyat, Capital Pure, Chrisman, P.C., and Chrisman breached the Settlement Agreement by failing or refusing to make each Quarterly Payment due thereunder.

40.     As a direct and proximate result of such Defendants' breach of the Settlement Agreement, CCTC has suffered damages in excess of $75,000, in an amount to be determined at the time of trial.

41.     CCTC has been forced to retain the services of an attorney to prosecute this matter and is entitled to recover its costs and reasonable attorney fees under Nevada law.

## SECOND CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing – against Shiva, Hannah, Shivahi, Vikhyat, Chrisman, P.C., and Chrisman)

42.     CCTC repeats, realleges, and incorporates by this reference each and all of the allegations contained in Paragraphs 1 through 41 of this Complaint, as if fully set forth herein.

43.     In Nevada, every agreement contains an implied covenant of good faith and fair dealing.

44.     The Settlement Agreement contains an implied covenant of good faith and fair dealing.

45.    The above-named Defendants—identified as "Counter-defendants" in the contract—owe CCTC a duty to act in good faith and a duty of fair dealing.  Through their actions established in the preceding Paragraphs, such Defendants violated and breached their duties of good faith and fair dealing to CCTC.

46.    As a direct and proximate result of such Defendants' breach of the implied covenant of good faith and fair dealing, CCTC has suffered damages in excess of $75,000, in an amount to be determined at the time of trial.

47.    CCTC has been forced to retain the services of an attorney to prosecute this matter and is entitled to recover its costs and reasonable attorney fees under Nevada law.

## THIRD CLAIM FOR RELIEF

**(Fraudulent Transfer under NRS 112.180–112.190 – against all Defendants)**

48.    CCTC repeats, realleges, and incorporates by this reference each and all of the allegations contained in Paragraphs 1 through 47 of this Complaint, as if fully set forth herein.

49.    NRS 112.180 provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) [w]ith actual intent to hinder, delay or defraud any creditor of the debtor; or (b) [w]ithout receiving reasonable equivalent value in exchange for the transfer or obligation, and the debtor: (1) [w]as engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business transaction; or (2) [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond his or her ability to pay as they became due."

50.    NRS 112.190 provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."  The statute further provides that "[a] transfer made by a debtor is fraudulent as to a creditor whose claim arose before

9

the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent."

51.     Capital Pure engaged in a fraudulent transfer under NRS 112.180 and 112.190, by dissolving and then transferring its ongoing business to DGITK after incurring the obligations set forth in the Settlement Agreement, for the purpose of hindering, delaying, or defrauding CCTC, or without receiving reasonable equivalent value for the transfer, resulting in Capital Pure having no ability to satisfy its ongoing payments obligations to CCTC under the Settlement Agreement. Upon information and belief, Capital Pure also engaged in a fraudulent transfer by transferring its business and/or assets to the Defendants, leaving Capital Pure insolvent, and where the Defendants had reasonable cause to believe that Capital Pure was insolvent.

52.     As a result of this fraudulent transfer, CCTC is entitled to attach or garnish any assets fraudulently transferred by Capital Pure to DGITK and/or the other Defendants.  CCTC is also entitled to an injunction against further disposition of any such assets by Capital Pure, DGITK and/or the other Defendants, (ii) appointment of a receiver to take charge of the assets transferred or other property of the transferee; and (iii) any other equitable or injunctive relief the circumstances may require.

53.     Upon the entry of a Judgment against Capital Pure, CCTC is also entitled to levy execution on the assets transferred or their proceeds.

54.     CCTC is also entitled to any further relief afforded by NRS Chapter 112, including, but not limited to, voiding any such fraudulent transfer and obtaining a Judgment against DGITK, the other Defendants, and/or any subsequent transferee of any of them, in connection with a fraudulent transfer made to evade liability under the Settlement Agreement.

55.     In performing the wrongful acts and omissions alleged above, Defendants acted in bad faith, in a knowing, willful, malicious, oppressive and/or fraudulent manner, and with the intent and purpose of advancing their own gain at the expense of CCTC.  CCTC is therefore entitled to punitive and exemplary damages against the Defendants, in a sum to be determined at the time of trial.

56.     CCTC has been forced to retain the services of an attorney to prosecute this matter and is entitled to recover its costs and reasonable attorney fees under Nevada law.

### FOURTH CLAIM FOR RELIEF

### (Declaratory Relief – against Shiva, Hannah, and Shivahi)

57.     CCTC repeats, realleges, and incorporates by this reference each and all of the allegations contained in Paragraphs 1 through 55 of this Complaint, as if fully set forth herein.

58.     Under NRS 30.030, "[a]ny person . . . whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

59.     A justiciable controversy exists between CCTC, on the one hand, and Shiva and Capital Pure, on the other hand, regarding their respective rights and obligations under the Settlement Agreement.

60.     CCTC and such Defendants have adverse interests regarding this controversy, which is ripe for judicial determination because harm is likely to occur, or has already occurred, absent the Court's adjudication of the parties' rights.

61.     CCTC has a legal and protectible interest in this controversy.

62.     CCTC is entitled to a declaration that the Confession of Judgment is valid under and should be entered as a Judgment against Shiva, and against Hannah and Shivahi as Trustees of Capital Pure.

63.     CCTC has been forced to retain the services of an attorney to prosecute this matter and is entitled to recover its costs and reasonable attorney fees under Nevada law.  This includes, without limitation, CCTC's right to recover its costs and reasonable attorney fees as special damages, because such costs and attorney fees were incurred as foreseeable damages arising from Defendants' bad faith conduct.

/ / /

/ / /

/ / /

**PRAYER FOR RELIEF**

WHEREFORE, CCTC prays for the following relief against the Defendants, jointly and severally, as follows:

1.    An award of CCTC's compensatory, general, incidental, and consequential damages in an amount in excess of $75,000;

2.    An award of declaratory relief as requested herein;

3.    An award of equitable and injunctive relief as requested herein;

4.    An award of costs and reasonable attorney fees incurred in connection with this matter, including, but not limited to, an award of costs and attorney fees as special damages arising from Defendants' bad faith conduct;

5.    An award of punitive damages;

6.    An award of prejudgment and post-judgment interest on all such amounts; and

7.    That the Court enter such other and further relief as it deems necessary and appropriate.

Dated this 30th day of October, 2025.

SKLAR WILLIAMS PLLC

_/s/ David B. Barney_____
Stephen R. Hackett, Esq.
Nevada Bar No. 5010
David B. Barney, Esq.
Nevada Bar No. 14681
410 South Rampart Blvd, Suite 350
Las Vegas, NV 89145
*Attorneys for Plaintiff*
*CC Technology Corporation*

12

## INDEX OF EXHIBITS

1          Mutual Release and Settlement Agreement