# EXHIBIT 1

Mutual Release and Settlement Agreement

## MUTUAL RELEASE AND SETTLEMENT AGREEMENT

This Mutual Release and Settlement Agreement (hereinafter "**Agreement**") is entered into this _____ day of January, 2025 (the "**Effective Date**"), by and between CC TECHNOLOGY CORPORATION, a Colorado corporation ("**CCTC**"), and CAPITAL PURE ASSETS, LTD, a Nevada limited liability company ("**Capital Pure**"), SHIVA PRAKASH, an individual ("**Shiva**"), HANNAH DAWN PRAKASH, an individual ("**Hannah**"), VIKHYAT PRAKASH, an individual ("**Vikhyat**"), JAMES CHRISMAN, P.C., a Nevada professional corporation ("**Chrisman, P.C.**"), and JAMES P. CHRISMAN, an individual ("**Chrisman**"). Each of the foregoing is referred to herein as a "**Party**," and are collectively referred to as the "**Parties**".

### RECITALS

**WHEREAS**, on April 8, 2024, Capital Pure filed a Complaint and Jury Demand (the "**Complaint**") against CCTC, styled *Capital Pure Assets, LTD v. CC Technology Corporation*, Case No. 2:24-cv-00680 in the United States District Court for the District of Nevada (the "**Lawsuit**"). In the Complaint, Capital Pure asserted the following claims against CCTC: (i) Breach of Contract; (ii) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (iii) Declaratory Relief;

**WHEREAS**, on June 17, 2024, CCTC filed an Answer and Counterclaim in the Lawsuit (the "**Counterclaim**"), in which CCTC generally denied the allegations made in the Complaint and asserted claims against Capital Pure, Shiva, Hannah, Vikhyat, Chrisman, P.C., and Chrisman (collectively, the "**Counter-defendants**"), as follows: (i) Alter Ego Liability against Shiva and Hannah; (ii) Fraud against Capital Pure, Shiva, Hannah, and Vikhyat; (iii) Deceptive Trade Practices/Consumer Fraud against Capital Pure, Shiva, and Hannah; (iv) Breach of Contract against Capital Pure, Shiva, and Hannah; (v) Breach of the Implied Covenant of Good Faith and Fair Dealing against Capital Pure, Shiva, and Hannah; (vi) Breach of Contract against Chrisman, P.C.; (vii) Breach of the Implied Covenant of Good Faith and Fair Dealing against Chrisman, P.C.; (viii) Breach of Fiduciary Duties against Chrisman and Chrisman, P.C.; (ix) Civil Conspiracy against the Counter-defendants; (x) Conversion against the Counter-defendants; (xi) Unjust Enrichment against the Counter-defendants; and (xii) Declaratory Relief against the Counter-defendants;

**WHEREAS**, during the pendency of the Lawsuit, the Court ordered the Counter-defendants to deposit into the registry of the Court a total amount of $336,000, to be held by the Court pending further order (the "**Court Deposit**");

**WHEREAS**, on or about September 30, 2024, the Counter-defendants deposited the Court Deposit into the Court registry, as ordered by the Court; and

**WHEREAS**, as a means of amicably resolving disputed claims to buy peace and avoid further time and expense associated with the Lawsuit, the Parties now wish to enter into this Agreement and resolve, as provided for below, all contracts, duties, issues, allegations, claims, counterclaims, defenses, rights, obligations, and causes of action, whether known or unknown, asserted or which could have been asserted by CCTC and/or the Counter-defendants in the Lawsuit or otherwise;

**1**

**NOW, THEREFORE**, in consideration of the foregoing Recitals, the mutual covenants hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

## TERMS

1.      **Recitals.**  The Recitals set forth above and the exhibits attached hereto are true and accurate and are incorporated into and made part of this Agreement.

2.      **Payment from Counter-defendants.**  In consideration of the Recitals, terms and other covenants and conditions set forth herein, the Counter-defendants shall pay to CCTC a total sum of One-Million-Three-Hundred-Thirty-Six-Thousand Dollars ($1,336,000.00) (the "**Settlement Amount**").  The Settlement Amount shall be paid as follows:

   a. Concurrently with their execution and delivery of this Agreement and the Confession of Judgment (defined below), Counter-defendants shall deliver to CCTC's counsel at the law offices of Sklar Williams PLLC, 410 S. Rampart Blvd., Suite 350, Las Vegas, Nevada 89145, Attn: David B. Barney, Esq., a certified check or cashier's check in the amount of Fourteen-Thousand Dollars ($14,000.00) (the "**Initial Payment**"), made payable to "Sklar Williams PLLC."

   b. Within three (3) business days of Counter-defendants' delivery of the Initial Payment as set forth above, the Parties shall file in the Lawsuit a "Stipulation and Order for Dismissal of Case with Prejudice, and for Release of Funds Held in Court Registry" (hereinafter, the "**Stipulation and Order**"), in the form attached hereto as **Exhibit A**.  Once entered by the Court, the Stipulation and Order shall dismiss all claims that were brought or which could have been brought in the Lawsuit between the Parties, including, but not limited to, the claims made in the Complaint and the Counterclaim, respectively.  The Stipulation and Order shall also direct the Court to release the Court Deposit to CCTC, through its counsel.  In the event the Court does not enter the Stipulation and Order attached hereto as Exhibit A, the Parties shall work in good faith to revise the Stipulation and Order in accordance with the Court's requirements to effectuate the purposes set forth in this Paragraph.

   c. Beginning on April 1, 2025, and continuing for a period of twenty-one months thereafter, the Counter-defendants shall make eight (8) quarterly payments to CCTC in the amount of One-Hundred-Twenty-Three-Thousand-Two-Hundred-Fifty Dollars ($123,250.00) (each, a "**Quarterly Payment**"), until the Settlement Amount is paid in full.  For the avoidance of doubt, the Quarterly Payments shall be made on the following dates: (i) April 1, 2025; (ii) July 1, 2025; (iii) October 1, 2025; (iv) January 1, 2026; (v) April 1, 2026; (vi) July 1, 2026; (vii) October 1, 2026; and (viii) January 1, 2027.

   d. Payment of each Quarterly Payment shall be made by electronic transfer of funds to CCTC, pursuant to the instructions below:

**2**

Account Name:       CC Technology Corporation

Routing Number: ██████████

Account Number: ██████████

Bank Name: ██████████████████████

e. For purposes of this Agreement, a Quarterly Payment is considered to be made or delivered when funds are received by CCTC.

f. Concurrently with the mutual execution of this Agreement, Capital Pure and Shiva shall execute and deliver to CCTC's counsel referenced in Section 2(a) above, a confession of judgment in the form attached hereto as **Exhibit B** (the "**Confession of Judgment**"), confessing judgment in favor of CCTC and against Capital Pure and Shiva, jointly and severally, in the amount of Nine-Hundred-Eighty-Six-Thousand Dollars ($986,000.00), less any Quarterly Payments made pursuant to this Agreement. The Confession of Judgment shall be held in trust by CCTC's counsel and not released to CCTC or any other person, and CCTC may file the Confession of Judgment only in the event that Capital Pure and Shiva default on their obligation to pay the Settlement Amount pursuant to the terms of this Agreement and the terms of the Confession of Judgment, which are incorporated herein by reference.

g. Capital Pure and Shiva reserve the right to prepay all or any portion of the Settlement Amount owed to CCTC without penalty or fee, and CCTC agrees to accept any such prepayment without penalty or fee; provided, however, that any such prepayment shall not affect the date on which any Quarterly Payment is required to be made hereunder, and any prepayment shall be applied first to the Quarterly Payment to be made on January 1, 2027, and then to the payment due on October 1, 2026, and so on.

h. In the event that Capital Pure and Shiva fail to make any Quarterly Payment required under this Agreement on or before the date on which such payment is due, CCTC shall provide notice to Capital Pure and Shiva of a default in accordance with Section 21 below, and Capital Pure and Shiva shall have a cure period of thirty (30) calendar days after the date on which such notice is given (in each case, a "**Cure Period**"), in which they may make the overdue payment without penalty; provided, however, that if a payment is made during a Cure Period, the date of any subsequent Quarterly Payment shall not be changed.

i. In the event Capital Pure and Shiva fail to make any Quarterly Payment on or before the date such payment is due, and then fail to make such payment in full during the applicable Cure Period, then CCTC may file the Confession of Judgment in its sole

3

**3**

discretion, without further notice or other action. CCTC's election to file the Confession of Judgment, or to not file it, shall not affect any other rights or remedies available to CCTC in connection herewith.

j. Upon full payment of the Settlement Amount to CCTC, CCTC's counsel shall return the original Confession of Judgment to counsel for the Counter-defendants (as referenced in Section 21 below), unfiled and unrecorded; provided, that CCTC and its counsel may retain copies of the Confession of Judgment for recordkeeping purposes.

k. The Parties acknowledge that they have not provided any warranties or representations regarding the tax consequences of this Agreement and that each Party is responsible for consulting with a tax advisor of its own choosing regarding the potential consequences of a settlement of this kind.

3. **Mutual General Release.** Upon the Effective Date, and except as to any payments, duties or obligations created by this Agreement, the Parties hereby agree and acknowledge satisfaction and full mutual general release and discharge of each of them, including, without limitation, each of their respective dependents, heirs, administrators, executors, officers, trustees, past and/or present owners, shareholders, investors, partners, managers, members, directors, consultants, agents, employees, independent contractors, customers, service providers, vendors, representatives, attorneys, sureties, insurers, predecessors, successors, parent companies, sister companies, subsidiary companies, assigns and assignors, all other persons and entities in which each Party has an interest, and all other representatives and successors-in-interest and each of their successors, heirs, and assigns, from any and all demands, claims, damages, losses, liens, agreements, contracts, covenants, costs (including, but not limited to, attorneys' fees and other litigation costs), and expenses of any character, and causes of action of every nature, character, or description whatsoever, whether in law, equity, or otherwise, whether known or unknown, whether suspected, anticipated, or unanticipated, that they had or now have against each other, including but not limited to those that arise from, relate to, or are connected in any way to the Lawsuit, the Complaint, and the Counterclaim (collectively, the "**Released Claims**"), each Party to bear their own attorneys' fees and costs.

The Parties expressly waive, settle, and release any known or unknown, suspected or unsuspected, contingent or non-contingent claims, whether or not concealed or hidden, without regard to any subsequent discovery or existence of different or additional facts.

The Parties acknowledge that they may hereafter discover facts different from, or in addition to, those that they now believe to be true with respect to the Released Claims, and agree that the foregoing release and waiver shall be and remain effective in all respects notwithstanding such different or additional facts or discovery thereof, and that this Agreement contemplates the extinguishment of all such Released Claims.

4. **Limitation of Mutual Releases.** The mutual release set forth above does not limit or otherwise affect any rights or claims held by the Parties that arise under this Agreement or after the Effective Date, including, but not limited to, CCTC's right to file the Confession of Judgment

4

**4**

in accordance with the terms thereof and this Agreement.  Nor do the releases set forth above affect those rights or claims of the Parties that cannot be lawfully waived.

5.    **Confidentiality.**   Each Party agrees that it will forever refrain and forbear from disclosing the specific terms of this Agreement to anyone other than counsel for the Parties and/or the Parties' financial advisors to the extent necessary for the preparation of tax returns and/or financial statements, except: (i) for purposes of enforcing the provisions of this Agreement; (ii) to the extent disclosure of this Agreement is required by applicable laws or regulations; (iii) to the extent disclosure may be necessary or advisable to any board or shareholder of any Party that is not a natural person; or (iv) pursuant to a specific subpoena or order requiring disclosure of this Agreement issued by a court, tribunal or governmental agency of competent jurisdiction.  In the event that a Party is required to disclose information regarding the terms of this Agreement in connection with such an order or subpoena, or otherwise under applicable law, such Party shall, unless prohibited by applicable law or the subject order or subpoena, provide notice to the other Parties of its obligation to disclose such information promptly upon its receipt of the order or subpoena, as the case may be, and shall provide the other Parties within the time permitted in such order or subpoena  the opportunity to challenge the order or subpoena, before producing this Agreement or disclosing the terms hereof.

6.    **Compromise of Disputed Claims.**  This Agreement is being made as the compromise of disputed claims arising out of, connected with, and relating to the Lawsuit, and it shall not be deemed in any way to be an admission of liability, responsibility, or wrongdoing by any Party, each of whom expressly denies any liability, responsibility, or wrongdoing.

7.    **Attorneys' Fees.**  Each Party shall bear its own costs and expenses, including attorneys' fees, in connection with the preparation, negotiation, and execution of this Agreement.

8.    **Governing Law and Jurisdiction.**  Without regard to the principles of conflict of laws, Nevada law exclusively shall govern the construction, effect and validity of this Agreement. The United States District Court for the District of Nevada shall have and maintain exclusive jurisdiction over any claims, lawsuits and/or disputes between the Parties arising out of or relating to the subject matter of this Agreement; provided, however, that in the event such court does not have jurisdiction for whatever reason, the state courts located in Clark County, Nevada shall have exclusive jurisdiction over such matters.

9.    **Integration; Amendment.** This Agreement constitutes a single, integrated written contract expressing the entire agreement and understanding of the Parties hereto with respect to the subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever, whether express or implied in fact, have been made by any Party to this Agreement as to the subject matter hereof, except as specifically set forth in this Agreement or the documents contemplated hereby.   All prior and contemporaneous discussions, contracts, duties and negotiations relating to the subject matter hereof have been and are merged and integrated into, and are superseded by, this Agreement.  The Parties may not amend this Agreement, except by a writing executed by all Parties hereto.

10.    **Knowledge.**   Each Party certifies that it has read, knows and understands the contents of this Agreement, has had the opportunity to consult an attorney regarding its contents,

5

**5**

Docusign Envelope ID: C4B14F49-CCB7-4A56-BDF1-07646D5D5672

appreciates the legal significance and consequences of signing this Agreement, and is not relying upon the representations of any other Party, or any person or attorney other than its own attorney, concerning the subject matter of this Agreement.

11. **Cooperation and Further Instruments.** Each Party shall do any act or thing and shall execute any and all documents or instruments necessary or proper to effectuate the provisions and intent of this Agreement.

12. **Authority to Execute Agreement.** Each Party hereto warrants and represents to the other that it has the power, capacity and authority to enter into and execute this Agreement.

13. **Severability.** All terms and conditions contained herein are severable. If any court of competent jurisdiction finds any term or condition of this Agreement to be invalid, void or unenforceable, that court shall interpret this Agreement as if it did not contain such invalid, void or unenforceable term or condition, and shall place, in lieu of such invalid, void or unenforceable term or condition, a term or condition that is valid, not void, and enforceable, and is as similar to such invalid, void or unenforceable term or condition as may be possible.

14. **Construction.** The terms and conditions of this Agreement shall be construed as a whole, according to their fair meaning and not strictly for or against any Party. The Parties acknowledge that each of them has reviewed this Agreement and had it reviewed by their attorneys. The Parties agree that any rule of construction that the interpretation of an ambiguous clause contained in this Agreement be construed against the drafting Party shall not apply in the interpretation of this Agreement.

15. **Captions.** The captions appearing at the commencement of the sections of this Agreement are descriptive only and for convenience. They shall not define, limit or describe the scope or intent of this Agreement, nor in any way affect this Agreement. The pronouns "it," "he" and "his," as used throughout this Agreement, shall be construed to include the singular, the plural, the female and neuter, and vice versa, and context requires.

16. **Waivers.** One or more waivers of any covenant, term or condition of this Agreement shall not be construed as a waiver of any subsequent breach of any covenant, term or condition. The consent or approval of any act by any Party to or for the other Party that requires consent or approval shall not be deemed a waiver of, or render unnecessary, consent to or approval of any subsequent similar act. The failure of a Party to invoke the provisions of any section of this Agreement shall not be deemed as a waiver by that Party of its right to invoke such provisions. Failure of a Party to insist on strict performance of any provision or to exercise any remedy hereunder shall not be deemed a waiver of any breach relating to such provision or giving rise to such remedy. No provision of this Agreement shall be deemed waived unless such waiver is in writing and signed by the Party making the waiver.

17. **No Third-Party Rights.** Unless specifically provided herein, the Parties have not intended this Agreement to create, and it shall not create, any rights in any person who is not a signatory to this Agreement. Notwithstanding anything to the contrary, this Agreement is enforceable against any successor in interest to any Party hereto.

**6**

18.     **Warranty.**  Each Party hereby warrants, represents, covenants and agrees that it has not sold, assigned, granted or transferred to any other person, firm, corporation, or entity any claim, counterclaim, demand, or cause of action occurring, arising or existing prior to the date of this Agreement relating to the subject matter hereof, expressly including, without limitation, any Released Claims.  The Parties further represent that no other person, firm, corporation, or entity has any right or ownership in or to any such claim, counterclaim, demand, or cause of action.

19.     **Execution in Counterparts.**  The Parties may sign this Agreement in one or more counterparts, each of which shall be deemed an original, but all of which together shall form one instrument.  Electronic or facsimile copies of this Agreement and electronic or facsimile signatures of this Agreement shall be deemed originals.

20.     **Notices.**  Any notices required or desired to be given under this Agreement shall be delivered by e-mail and Certified U.S. Mail, postage prepaid and return receipt requested, to the following:

**For CCTC:**

CC Technology Corporation
Attn: Robert Lang, CEO
7804 W. College Drive, Suite 2SW
Palos Heights, IL 60463
Email: ▮▮▮▮▮▮▮▮▮▮▮.

with a copy to:

Sklar Williams PLLC
Attn: David B. Barney, Esq.
410 S. Rampart Blvd., Suite 350
Las Vegas, Nevada 89145
Email: dbarney@sklar-law.com

**For Capital Pure, Shiva, Hannah, and Vikhyat:**

Capital Pure Assets, Ltd.
Attn: Shiva Prakash
2251 N. Rampart Blvd., Suite #325
Las Vegas, NV 89128
Email: ▮▮▮▮▮▮▮▮▮▮▮▮▮

with a copy to:

Hutchison & Steffen, PLLC
Attn: Piers R. Tueller, Esq.
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145

7

Docusign Envelope ID: C4B14F49-CCB7-4AF6-BDF1-07646D5D5672

Email: ptueller@hutchlegal.com

**For Chrisman and Chrisman, P.C.:**

James P. Chrisman, Esq.
8924 Spanish Ridge Ave
Las Vegas, NV 89148
Email: ███████████████████

with a copy to:

Hutchison & Steffen, PLLC
Attn: Piers R. Tueller, Esq.
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
Email: ptueller@hutchlegal.com

Service shall be conclusively deemed made on the date of delivery by mail, or on the first date of attempted delivery by mail, provided that notice was also given by e-mail. Any Party may change its address for the purpose of receiving notices hereunder, by a written notice given in the manner aforesaid to the other Parties.

21. **No Rescission.** As part of the foregoing releases, the Parties, and each of them, acknowledge that they understand and accept the risk that the facts with respect to which this Agreement is entered into may be different from the facts now known or believed by them to be true. This Agreement shall remain in all respects effective and shall not be subject to termination or rescission, including by virtue of any such differences in fact or by an allegation of fraud in the inducement to enter into this Agreement. In entering into this Agreement, the Parties acknowledge that they have conducted their own independent investigation and have not relied on any statement, representation, promise, inducement or agreement not expressly contained within this Agreement.

22. **Successors and Assigns.** This Agreement, including the releases contained herein, shall obligate, be binding upon, extend to, and inure to the benefit of, each of the successors, assigns, grantees, purchasers, and transferees of each of the Parties hereto, who may assume any or all of the above-described capacities subsequent to the execution of this Agreement, including, but not limited to, any trustee appointed in any bankruptcy case or any creditor(s) or committee(s) in any such bankruptcy case.

[*The remainder of this page is intentionally left blank*]

[*Signature page to follow*]

8

**8**

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement and set forth their signatures intending to be bound thereby, as of the date set forth below.

**CC TECHNOLOGY CORPORATION, a Colorado corporation**

By: _Robert Lang_ _____
      6EB96E30C83C467...

Its: CEO _____

Date: 2/19/2025 _____

**CAPITAL PURE ASSETS, LTD, a Nevada limited liability company**

By: _____

Its: _____

Date: _____

**SHIVA PRAKASH, an individual**



_____

Date: _____

**HANNAH DAWN PRAKASH, an individual**



_____

Date: _____

**VIKHYAT PRAKASH, an individual**



_____

Date: _____

**JAMES CHRISMAN, P.C., a Nevada professional corporation**


By: _____

Its: _____

Date: _____

**JAMES P. CHRISMAN, an individual**



_____

Date: _____

9

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement and set forth their signatures intending to be bound thereby, as of the date set forth below.

**CC TECHNOLOGY CORPORATION,**
**a Colorado corporation**

By: _____

Its: _____

Date: _____

**SHIVA PRAKASH, an individual**

_~~Chrll~~_____

Date: 02/18/25

**VIKHYAT PRAKASH, an individual**

_____

Date: 02/14/25

**JAMES P. CHRISMAN, an individual**

_____

Date: _____

**CAPITAL PURE ASSETS, LTD, a Nevada**
**limited liability company**

By: _Hannah Prakash_

Its: _Member_

Date: 2/18/25

**HANNAH DAWN PRAKASH, an**
**individual**

_____

Date: 2/18/25

**JAMES CHRISMAN, P.C., a Nevada**
**professional corporation**

By: _____

Its: _____

Date: _____

9

**10**

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement and set forth their signatures intending to be bound thereby, as of the date set forth below.

**CC TECHNOLOGY CORPORATION,** a Colorado corporation

By: _____

Its: _____

Date: _____

**SHIVA PRAKASH, an individual**

_____

Date: _____

**VIKHYAT PRAKASH, an individual**

_____

Date: _____

**JAMES P. CHRISMAN, an individual**

*Jas P. Chrisman*
Date: 2·4·25

**CAPITAL PURE ASSETS, LTD,** a Nevada limited liability company

By: _____

Its: _____

Date: _____

**HANNAH    DAWN    PRAKASH,    an** individual

_____

Date: _____

**JAMES   CHRISMAN,   P.C.,   a   Nevada** professional corporation

By: *Jas P. Chrisman*

Its: *President*

Date: *2·4·25*

9

**11**

# EXHIBIT A

Stephen R. Hackett, Esq.
Nevada Bar No.: 5010
David B. Barney, Esq.
Nevada Bar No.: 14681
SKLAR WILLIAMS PLLC
410 South Rampart Boulevard, Suite 350
Las Vegas, Nevada 89145
Telephone: (702) 360-6000
Facsimile:  (702) 360-0000
Email: shackett@sklar-law.com
        dbarney@sklar-law.com
*Attorneys for Defendant/Counterclaimant*
*CC Technology Corporation*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CAPITAL PURE ASSETS, LTD, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CC TECHNOLOGY CORPORATION, a Colorado corporation; DOES 1 through 10, inclusive; and ROE CORPORATIONS 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-00680-NJK<br><br><br>**STIPULATION AND ORDER FOR DISMISSAL OF CASE WITH PREJUDICE, AND FOR RELEASE OF FUNDS HELD IN COURT REGISTRY** |
| CC TECHNOLOGY CORPORATION, a Colorado corporation,<br><br>Counterclaimant,<br><br>v.<br><br>CAPITAL PURE ASSETS, LTD, a Nevada limited liability company; SHIVA PRAKASH, an individual; HANNAH DAWN PRAKASH, an individual; VIKHYAT PRAKASH, an individual; JAMES CHRISMAN, P.C., a Nevada professional corporation; JAMES P. CHRISMAN, an individual; DOES 1 through 10, inclusive; and ROE ENTITIES I through X, inclusive,<br><br>Counter-defendants. | |

1

**13**

Plaintiff and Counter-defendants Capital Pure Assets, Ltd, Shiva Prakash, Hannah Dawn Prakash, Vikhyat Prakash, James Chrisman, P.C., and James P. Chrisman, (collectively, Counter-defendants"), and Defendant/Counterclaimant CC Technology Corporation ("CCTC"), by and through their undersigned counsel of record, hereby submit this Stipulation and Order for Dismissal of Case with Prejudice, and for Release of Funds Held in Court Registry, and stipulate as follows:

1.   The parties in this case have reached a global resolution regarding the subject matter of this lawsuit.

2.   The parties stipulate and agree that the funds currently held in the Court's registry in connection with this matter, in the amount of Three-Hundred-Thirty-Six-Thousand Dollars ($336,000.00), shall be released to counsel for CCTC, by check made payable to "Sklar Williams PLLC".

/ / /

/ / /

/ / /

2

**14**

3.     The parties further stipulate and agree that once the funds in the Court's registry are released in accordance with the above, this case, including all claims that were made or which could have been made by the parties herein, shall be **DISMISSED** with prejudice, with each party to bear its own costs and attorney fees in connection herewith.

**IT IS SO STIPULATED**.

Dated this ____ day of December, 2024.          Dated this ____ day of December, 2024.

HUTCHISON & STEFFEN, PLLC          SKLAR WILLIAMS PLLC

_____          _____
Joseph R. Ganley, Esq. (NBN: 5643)          Stephen R. Hackett, Esq. (NBN: 5010)
Piers R. Tueller, Esq. (NBN: 14633)          David B. Barney, Esq. (NBN: 14681)
Ramez A. Ghally, Esq. (NBN: 15225)          410 S. Rampart Blvd., Suite 350
Peccole Professional Park          Las Vegas, Nevada 89145
10080 West Alta Drive, Suite 200          *Attorneys for Defendant/Counterclaimant*
Las Vegas, Nevada 89145          *CC Technology Corporation*
*Attorneys for Plaintiff and Counter-defendants*
*Capital Pure Assets, Ltd, Shiva Prakash,*
*Hannah Dawn Prakash, Vikhyat Prakash,*
*James Chrisman, P.C., and James P. Chrisman*

### **ORDER**

In light of the above Stipulation, it is hereby ORDERED, ADJUDGED AND DECREED that the funds currently held in the Court's registry in connection with this matter, in the amount of Three Hundred Thirty-Six Thousand Dollars and No Cents ($336,000.00), shall be released to counsel for CCTC, by check made payable to "Sklar Williams PLLC".

It is further ORDERED, ADJUDGED AND DECREED that once the funds in the Court's registry are released in accordance with this Order, this case, including all claims that were made, or which could have been made by the parties herein, is DISMISSED with prejudice, with each party to bear its own costs and attorney fees in connection herewith.

IT IS SO ORDERED.

Date: _____

Signed: _____
        JUDGE NANCY J. KOPPE
        US MAGISTRATE JUDGE

3

**15**

# EXHIBIT B

Stephen R. Hackett, Esq.
Nevada Bar No.: 5010
David B. Barney, Esq.
Nevada Bar No.: 14681
SKLAR WILLIAMS PLLC
410 South Rampart Boulevard, Suite 350
Las Vegas, Nevada 89145
Telephone: (702) 360-6000
Facsimile: (702) 360-0000
Email: shackett@sklar-law.com
         dbarney@sklar-law.com
*Attorneys for Plaintiff*
*CC Technology Corporation*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CC TECHNOLOGY CORPORATION, a Colorado corporation,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL PURE ASSETS, LTD, a Nevada limited liability company; and SHIVA PRAKASH, an individual;<br><br>Defendants. | Case No.: 2:24-cv-00680-NJK<br><br><br>**CONFESSION OF JUDGMENT** |

**IT IS HEREBY STIPULATED AND AGREED** that pursuant to NRS 17.090 through NRS 17.100, Defendants CAPITAL PURE ASSETS, LTD, a Nevada limited liability company, and SHIVA PRAKASH, an individual (collectively, the "**Defendants**"), hereby agree, stipulate, confess, and authorize the entry of judgment against them jointly and severally, and in favor of Plaintiff CC TECHNOLOGY CORPORATION ("**CCTC**"), in the amount of NINE-HUNDRED-EIGHTY-SIX-THOUSAND DOLLARS ($986,000.00), less all Quarterly Payments made pursuant to the Settlement Agreement referenced in Paragraph 3 below, through the date this Confession of Judgment is entered, all of which total an amount of $_____, and therefore, the total judgment amount entered (the "**Judgment**") shall be $_____.

**IT IS FURTHER STIPULATED AND AGREED** that pursuant to NRS 17.100, Defendants agree and admit that this Confession of Judgment is for a debt justly due and owing

1

from Defendants to Plaintiff, arising from the following facts:

1.     On April 8, 2024, Defendant Capital Pure Assets, Ltd ("Capital Pure") filed a Complaint and Jury Demand against CCTC in the case styled as *Capital Pure Assets, LTD v. CC Technology Corporation*, Case No. 2:24-cv-00680 in the United States District Court for the District of Nevada (the "**Lawsuit**").

2.     On June 17, 2024, CCTC filed an Answer and Counterclaim (the "**Counterclaim**") against the Defendants, among others, in the Lawsuit.  In the Counterclaim, CCTC stated the following claims for relief against the Defendants: (i) Alter Ego Liability; (ii) Fraud; (iii) Deceptive Trade Practices/Consumer Fraud; (iv) Breach of Contract; (v) Breach of the Implied Covenant of Good Faith and Fair Dealing; (vi) Civil Conspiracy; (vii) Conversion; (viii) Unjust Enrichment; and (ix) Declaratory Relief.

3.     On or about December ____, 2024, the parties in the Lawsuit, including, but not limited to, CCTC and Defendants, agreed to fully compromise and settle all claims and counterclaims that were brought, or which could have been brought in the Lawsuit, by entering into a Mutual Release and Settlement Agreement (the "**Settlement Agreement**").

4.     The Settlement Agreement requires, *inter alia*, that Defendants make eight (8) quarterly payments of One Hundred Twenty-Three Thousand Two Hundred Fifty Dollars and No Cents ($123,250.00) to CCTC (each, a "**Quarterly Payment**"), for a total amount of $986,000.00. The Settlement Agreement requires that the Quarterly Payments be made on the following dates: (i) April 1, 2025; (ii) July 1, 2025; (iii) October 1, 2025; (iv) January 1, 2026; (v) April 1, 2026; (vi) July 1, 2026; (vii) October 1, 2026; and (viii) January 1, 2027.

**IT IS FURTHER STIPULATED AND AGREED** that CCTC shall be entitled to file this Confession of Judgment with the Court only upon default by the Defendants, as permitted under the terms of the Settlement Agreement and the submission of an affidavit by CCTC stating that Defendants have defaulted on their obligation to timely pay all Quarterly Payments, and that Judgment may be entered, less any and all Quarterly Payments made by Defendants pursuant to the Settlement Agreement.

**IT IS FURTHER STIPULATED AND AGREED** that this Confession of Judgment has

2

18

been entered into knowingly, freely and voluntarily, by each of the Defendants after consultation with their own counsel.

### VERIFICATION TO CONFESSION OF JUDGMENT

COUNTY OF CLARK )
                             ) ss.
STATE OF NEVADA )

Under penalty of perjury, the undersigned declare that it/he/she is authorized to sign the foregoing Confession of Judgment, has done freely and voluntarily after consulting with counsel, and knows, understands, and agrees to be bound by the terms of such Confession of Judgment, jointly and severally.

**CAPITAL PURE ASSETS, LTD**, a Nevada limited liability company

By: _____

Its: ____Chairman.____

Date: __02/18/2025__

SUBSCRIBED AND SWORN to before me this _18th_ day of ~~December, 2024.~~ february, 2025


NOTARY PUBLIC

DANIELLE KELLEY
Notary Public, State of Nevada
No. 05-100321-1
My Appt. Exp. July 11, 2025

**SHIVA PRAKASH**, an individual

_____

Date: __02/18/2025__

SUBSCRIBED AND SWORN to before me this _18th_ day of ~~December, 2024.~~ february, 2025


NOTARY PUBLIC

DANIELLE KELLEY
Notary Public, State of Nevada
No. 05-100321-1
My Appt. Exp. July 11, 2025

3