Stephen R. Hackett, Esq.
Nevada Bar No.: 5010
David B. Barney, Esq.
Nevada Bar No.: 14681
SKLAR WILLIAMS PLLC
410 South Rampart Boulevard, Suite 350
Las Vegas, Nevada 89145
Telephone: (702) 360-6000
Facsimile:  (702) 360-0000
Email: shackett@sklar-law.com
          dbarney@sklar-law.com
*Attorneys for Plaintiff*
*CC Technology Corporation*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CC TECHNOLOGY CORPORATION, a Colorado corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHIVA PRAKASH, an individual; HANNAH DAWN PRAKASH, in an individual capacity and as Trustee of Capital Pure Assets, Ltd, a dissolved Nevada limited liability company; SHIVAHI PRAKASH, as Trustee of Capital Pure Assets, LTD, a dissolved Nevada limited liability company; VIKHYAT PRAKASH, an individual; DGITK LLC, a Delaware limited liability company; JAMES CHRISMAN, P.C., a Nevada professional corporation; JAMES P. CHRISMAN, an individual; DOES 1 through 10, inclusive; and ROE ENTITIES I through X, inclusive,<br><br>Defendants. | Case No. 2:25-cv-02123-JAD-BNW<br><br><br>**PLAINTIFF CC TECHNOLOGY CORPORATION'S OPPOSITION TO DEFENDANT SHIVA PRAKASH'S MOTION TO DISMISS ENTIRE ACTION WITH PREJUDICE** |

Plaintiff CC Technology Corporation ("Plaintiff" or "CCTC"), by and through its counsel of record, the law firm of Sklar Williams PLLC, respectfully submits this Opposition to Defendant Shiva Prakash's Motion to Dismiss Entire Action with Prejudice (ECF No. 4).

/ / /

1

2

This Opposition is made based upon the attached Memorandum of Points and Authorities, all of the papers and pleadings on file herein, and any oral argument that the Court will allow at the hearing on this matter.

Dated this 28th day of November, 2025.

SKLAR WILLIAMS PLLC

*/s/ David B. Barney*_____
Stephen R. Hackett, Esq.
Nevada Bar No. 5010
David B. Barney, Esq.
Nevada Bar No. 14681
410 South Rampart Blvd, Suite 350
Las Vegas, NV 89145
*Attorneys for Plaintiff*
*CC Technology Corporation*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In or around May 2023, Defendants approached CCTC and represented that they were part of a reputable business called Capital Pure Assets, Ltd ("Capital Pure"), which had connections to the financial industry and access to significant funds located in India.  ECF No. 1, ¶ 13.  They offered CCTC a Standby Letter of Credit ("SBLC") in the amount of $50 million, provided that CCTC first deposited $336,000 into an escrow account held by Defendants James P. Chrisman ("Chrisman") and James Chrisman, P.C ("Chrisman, P.C.").  *Id.*  These terms were reduced to a written contract providing timelines for Capital Pure to provide funding, which they failed to perform and defaulted on.  *Id.* ¶¶ 14-17.

This turned out to be a fraudulent scheme by Defendants in order to scam CCTC.  *Id.* ¶ 12. The parties engaged in prior litigation in the matter captioned *Capital Pure Assets, Ltd. v. CC Technology Corporation*, Case No. 2:24-cv-00680 in the United States District Court for the District of Nevada (hereinafter, the "Prior Action").  *Id.* ¶ 18.

In the Prior Action, CCTC brought claims against the following parties arising from the SBLC scheme and the prior written contract: (i) Capital Pure; (ii) Shiva Prakash ("Shiva"); (iii) Hannah Dawn Prakash ("Hannah"); (iv) Vikhyat Prakash ("Vikhyat"); (v) Chrisman, P.C.; and (vi) Chrisman.  *Id.* ¶ 19.  In particular, CCTC asserted the following claims for relief: (a) Fraud against Capital Pure, Shiva, Hannah, and Vikhyat, (b) Deceptive Trade Practices/Consumer Fraud against Capital Pure, Shiva, and Hannah, (c) Breach of Contract against Capital Pure, Shiva, and Hannah, (d) Breach of the Implied Covenant of Good Faith and Fair Dealing against Capital Pure, Shiva, and Hannah, (e) Breach of Contract against Chrisman, P.C., (f) Breach of the Implied Covenant of Good Faith and Fair Dealing against Chrisman, P.C., (g) Breach of Fiduciary Duty against Chrisman and Chrisman, P.C., and (h) Civil Conspiracy, (i) Conversion, (j) Unjust Enrichment, and (k) Declaratory Relief against Capital Pure, Shiva, Hannah, Vikhyat, Chrisman, P.C. and Chrisman.  *Id.*  The Prior Action resulted in a Settlement Agreement executed on February 19, 2025 (hereinafter the "Settlement Agreement"), and a dismissal of the Prior Action.  *Id.* ¶¶ 22-24.

Defendants then immediately breached the Settlement Agreement, and CCTC brings the present matter to enforce the Settlement Agreement. *Id.* ¶¶ 37-63. In fact, Defendants did not just refuse to pay, but they dissolved Capital Pure, transferred its assets, and opened a new entity, DGITK LLC (hereinafter "DGITK"), to begin conducting the same business as Capital Pure in an effort to avoid their obligations. *Id.* ¶¶ 33-34.

Through a series of ludicrous "legal" arguments, Defendant Shiva brings a Motion to Dismiss claiming that the dismissal of the Prior Action precludes enforcement of the Settlement Agreement based upon *Res Judicata*. In support of his argument, Shiva repeatedly cites to fake or non-existent caselaw, miscites actual cases, and incorrectly quotes numerous authorities. Many of the citations provided by Shiva appear not to exist, and the alleged holdings of the cited cases that do exist are false. CCTC requests that Shiva be required to produce copies of his cited authorities, as CCTC's counsel was unable to locate many of them, and the ones that do exist largely do not stand for the propositions for which they are cited.

First, Shiva claims that Res Judicata precludes this action as it arises out of the same facts and circumstances as the Prior Action. However, as pointed out herein, the Prior Action brought claims for relief arising from a fraudulent scheme and set forth different underlying facts and was based upon different breaches of different contracts. The resolution of the Prior Action led to the Settlement Agreement and the fraudulent transfers described herein for the sole purpose of Defendants attempting to avoid their obligations under the Settlement Agreement. This is a different transaction and occurrence from the original case and Res Judicata is completely inapplicable.

Next, Shiva claims that this Court has no subject matter jurisdiction, despite the fact that there is clear diversity of citizenship because Plaintiff is a Colorado citizen and Defendants are Nevada citizens and residents and a Delaware company with offices in Nevada. The amount in controversy is undeniably more than $75,000, giving this Court clear subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

Shiva then goes on to argue that CCTC has not stated a claim for fraudulent transfer with the particularity required under Fed. R. Civ. P. 9(b). First, it is unclear whether Rule 9(b) applies

4

to pleading a statutory fraudulent transfer claim as alleged in the Complaint.  Even assuming Rule 9(b) applies, Shiva vastly exaggerates the requirements of that rule by claiming that since the specific documents and bank accounts were not described in detail in the Complaint, it is not particular enough.  That is not the standard for pleading fraud under Rule 9(b).  CCTC has stated the "who, what, where, when, why, and how" sufficiently to meet the particularity requirements under Fed. R. Civ. P.  9(b).

Finally, Shiva brings up his Confession of Judgment that accompanied the Settlement Agreement and argues it somehow bars any further action against him and makes vague arguments of failure to state a claim for several of CCTC's claims for relief, again citing to non-existent or inapplicable case law.  As explained below, however, none of Shiva's arguments have any merit and they are all a transparent attempt to continue to deny, delay, and avoid liability.  Accordingly, CCTC respectfully requests that Shiva's Motion to Dismiss be denied in its entirety.

## II.      LEGAL STANDARDS

Rule 8(a)(2) requires that a plaintiff's' complaint contain only "a short and plain statement of the claim showing that the pleader is entitled to relief in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2).  Fed. R. Civ. P. 12(b)(6) allows for dismissal where there is a "failure to state a claim upon which relief can be granted."  *Id.*  In order to avoid dismissal, a claim need only "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 662 (2009).  "Dismissal is appropriate **only** when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests."  *Wheeler v. Terrible Herbst Oil Co.,* No. 2:10-cv-00866-GMN-NJK, 2013 WL 3974887, at *3 (D. Nev. July 30, 2013) (bold added).

In deciding a Rule 12(b)(6) motion to dismiss, "all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff."  *Williams v. Gerber Prods. Co*., 523 F.3d 934, 936 (9th Cir. 2008).  The court must examine the claim to determine whether it contains sufficient factual allegations "to raise a right to relief above the speculative level." *Ashcroft*, 556 U.S. at 662 (2009).  The issue is not whether the plaintiff will

5

ultimately prevail, but whether it has properly stated a claim for which it is entitled to offer evidence to support its claims. *Scheuer v. Rhodes,* 416 U.S. 232, 233 (1974).  Moreover, it is well established that, in passing on a motion to dismiss for failure to state a claim for relief, the allegations of a complaint should be construed favorably to the pleader. *Id.*

With regard to a claim that implicates Rule 9(b), the rule requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  Rule 9(b) ensures that defendants are given proper notice of any allegations of fraud so they can defend against the charge, while also preventing the filing of a complaint as a baseless pretext for the discovery of unknown wrongs. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Further, plaintiffs must set forth not only the neutral facts necessary to identify the transaction, but also "what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citing *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).  In short, the plaintiff "must set forth an explanation as to why the statement or omission complained of was false or misleading." *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

## III.    ARGUMENT

### A.    This Matter Arises from a Breach of the Settlement Agreement, Not from the Facts of the Prior Action, and Res Judicata Does Not Apply.

Shiva first argues this lawsuit is barred based on the dismissal of the Prior Action under res judicata.  ECF No. 4 at 4.  He is simply wrong.  Shiva first misapplies the test he cites to under *Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003).  In *Tahoe,* the Ninth Circuit states that "[r]es judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe*, 322 at 1077 (internal citations and quotations omitted).

Once the Settlement Agreement was entered into, a new nucleus of rights and obligations was created.  Defendants then breached these rights and obligations, resulting in harm to CCTC. This is a separate nucleus of facts entirely distinct from the Prior Action.  In fact, in *Kokkonen v.*

*Guardian Life Insurance Company of America*, 511 U.S. 375, 378 (1994), which is cited by Shiva in the Motion, it is specifically stated that an action to enforce a settlement agreement is more than just a continuation or renewal of the dismissed lawsuit.

There is no identity of claims, as they arise from entirely different sets of facts and circumstances.  The Prior Action concerned a Standby Letter of Credit Scheme, various breaches of contract arising out of prior executed contracts between the parties, as well as claims of fraud, conversion, and deceptive trade practices.  All of the claims in the present case arose after these facts and circumstances and involve actions occurring after the settlement of the Prior Action.  Res judicata cannot bar claims arising from conduct that occurred after the facts and circumstances underlying the Prior Action.

The Prior Action was resolved by the parties' execution of the Settlement Agreement, Defendants breached the Settlement Agreement, and CCTC brings this new action to enforce its rights arising under the Settlement Agreement.  Through the Motion to Dismiss, Shiva essentially seeks a ruling that any Prior Action resolved by a Settlement Agreement is the same case as a later action to enforce that Settlement Agreement—a position that would render every single settlement agreement meaningless and unenforceable.

As support for this meritless position, Shiva cites to *Sweetwater Valley Civic Ass'n v. City of Nat'l City,* 555 F.3d 1215, 1223 (9th Cir. 2009).  ECF No. 4, at 5.  CCTC is unable to locate this case based upon that citation.  The closest case that CCTC is able to locate is a case with similar party names under the citation of *Sweetwater Valley Civic Assn. v. City of Nat'l City*, 18 Cal. 3d 270, 272, 555 P.2d 1099, 1100 (1976).  However, this ruling deals with judicial review of a redevelopment plan and does not reference settlement agreements, as misleadingly claimed by Shiva.

Shivat's argument improperly attempts to conflate claims leading to a settlement with claims arising from a breach of that settlement.  The latter cannot logically be barred by the former.  Since there is no identity of claims, and this action arises out of a separate set of rights and obligations, res judicata does not bar CCTC's claims.

/ / /

**B.      This Court has Subject Matter Jurisdiction over this Case.**

Shiva next argues the Court lacks subject matter jurisdiction over this case, citing *Oparaugo v. Watts,* 884 F.3d 811, 814 (9th Cir. 2018).  As an initial matter, CCTC was not able to locate this case, and it does not believe it exists.  A case in the D.C. Court of Appeals exists under the same name, but a different citation, and it does not address the issues Shiva cited the case as purportedly holding.  *See Oraraugo v. Watts,* 884 A.2d 63 (D.C. 2005).

In any event, Shiva claims that under to *Kokkonen,* the Court does not have subject matter jurisdiction over this matter. ECF No 4, at 6.  *Kokkonen* did address subject matter jurisdiction in the context of a settlement agreement, but it simply provides that actions to enforce a settlement agreement require their own basis for jurisdiction and cannot simply bootstrap the subject matter jurisdiction of a federal court over the original action to cover a breach of contract claim arising from a breach of the settlement agreement after dismissal of the original action.  *Kokkonen*, 511 U.S. at 378. CCTC agrees, as this is exactly why this case was filed as opposed to CCTC litigating the matter further in the Prior Action.  As required by *Kokkonen*, this case has its own independent subject matter jurisdiction based upon diversity under to 28 U.S.C. § 1332.  ECF No. 1, ¶ 10.

As alleged in the Complaint, CCTC is a citizen of Colorado, and Defendants are all citizens of Nevada, with DGITK also being a Delaware entity. ECF No. 1, ¶¶ 1-8.  Complete diversity of citizenship exists, and the amount in controversy is undisputedly over $75,000.  ECF No. 1, ¶ 10. Accordingly, independent subject matter jurisdiction over this exists, and this court's exercise of jurisdiction does not run afoul of 28 U.S.C. § 1332 or *Kokkonen*.  In addition, the clear language of the Settlement Agreement provides a consent by the parties to Nevada law and states that, "[t]he United States District Court for the District of Nevada shall have and maintain exclusive jurisdiction over any claims, lawsuits and/or disputes between the Parties arising out of or relating to the subject matter of this Agreement."  ECF No 1-1, ¶ 8.

Because an independent basis for subject matter jurisdiction exists for these claims under to 28 U.S.C. § 1332, and the parties agreed to venue in this Court under the terms of the Settlement Agreement itself, this Court has subject matter jurisdiction over all of CCTC's claims.

/ / /

**C.      CCTC has not Split Any Claims.**

Shiva attempts to avoid liability for his actions by arguing that this matter "repackages" the claims from the Prior Action.  This is not how res judicata works.  Had CCTC brought the **identical** claims against Defendants as the original claims, he might have been correct; however, those original claims were settled pursuant to the Settlement Agreement, which was then breached by Defendants.

CCTC bring this action to enforce the Settlement Agreement and recover for Defendants breaches—not to try to relitigate the Prior Action or to even litigate claims that could have been brought in the Prior Action.  This is a separate transaction, not the original set of facts and circumstances surrounding the Prior Action.  Rather, CCTC seeks relief in respect of a breach of the Settlement Agreement that resolved the Prior Action, and it has therefore not impermissibly split its claims.

**D.      CCTC has Properly Stated a Claim for Fraudulent Transfer.**

Shiva claims that CCTC has not stated its claim for fraudulent transfer with particularity required under Fed. R. Civ. P. 9(b).  ECF No 4, at  7.  Shiva cites *Decker v. Tramiel*, 748 F. Supp. 1533, 1540 (C.D. Cal. 1990), as support for its position that fraudulent transfer claims are subject to Fed. R. Civ. P. 9(b). ECF No 4, 4.  This case under this citation does not exist, as far as CCTC is able to determine.  Accordingly, and upon further review of the issue, CCTC is not aware of authority holding that Rule 9(b) pleading standards apply as a matter of law to all statutory fraudulent transfer claims under Nevada law.

Even assuming that the Rule 9(b) requirements apply to pleading statutory fraudulent transfer claims under Nevada law, however, Shiva's arguments raise Rule 9(b)'s particularity requirements to a level that is simply incorrect.  Shiva argues that since the pleadings do not define which documents were used, what consideration was paid, and what exact accounts were involved, that CCTC's fraudulent transfer claim fails under Rule 9(b)'s particularity requirements.  This information will be determined in discovery, and it is impossible for CCTC to know what exact accounts were used prior to discovery, as this was part of the Defendants' scheme to avoid liability. Fed. R. Civ. P. 9(b)  requires  particularity  in  the  circumstances  constituting  fraud,  not  the

9

impossible identification of internal, undisclosed banking details uniquely within Defendants' knowledge and control.

The Ninth Circuit has held that a plaintiff is not required to plead all facts supporting each and every instance of fraud, but that it is sufficient to plead fraud with the level of specificity knowable by the plaintiff in the exercise of reasonable diligence. *Ebeid v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010). Moreover, a "recognized exception to Rule 9(b)'s particularized pleading requirement" applies where "the facts constituting the circumstance of the alleged fraud are peculiarly within the defendant's knowledge or are readily obtainable by him." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (citing *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *Englewood Lending Inc. v. G&G Coachella Invs., LLC*, 2009 WL 10670409, at *5–6 (C.D. Cal., July 6, 2009) (relaxing Rule 9(b)'s specificity requirements "because the specific information relating to the purported fraudulent transfer lies" with the defendant)). In this case, the details Shiva argues are lacking, such as the exact back accounts, which documents were used and what consideration was paid, are all peculiarly within the Defendants' knowledge and control.

Plaintiff has set forth the who, what, where, when, and how relating to the fraudulent transfer, which is all that is required under Rule 9(b) at this time. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Plaintiff alleges that on April 10, 2025, Defendants dissolved Capital Pure, while still representing that it was engaged in business and soliciting investments, and formed DGITK four days later to run the same business using the same address in Nevada, in an effort to defraud CCTC as a creditor and evade liability under the Settlement Agreement. ECF No. 1, ¶ 33-34. As noted above, Rule 9(b) states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiff further alleges that on or around the same time, other assets of Capital Pure were transferred to the other Defendants, all with the intent for the Defendants' to avoid their obligations under the Settlement Agreement. ECF No. 1, ¶ 51-55. This is all that is required to plead a fraudulent transfer with the specificity required by Rule 9(b), to the extent the rule applies to all fraudulent transfer claims made under Nevada law.

**E.    The Confession of Judgment Does not Bar CCTC's Claims.**

Shiva next argues that the Confession of Judgment provides the "exclusive remedy" pursuant to the Settlement Agreement. ECF No. 4, at 9.  First, nowhere in the Settlement Agreement does such restrictive language exist. *See generally* ECF No 1-1.  To the contrary, the Settlement Agreement expressly provides that "CCTC may file the Confession of Judgment" in the event Capital Pure and Shiva default on their payment obligations, ECF No. 1-1, at 3 (Section 2(f)), and that "CCTC's election to file the Confession of Judgment, or to not file it, **shall not affect any other rights or remedies available to CCTC in connection herewith**." *Id.* at 3-4 (Section 2(i)) (bold added).  This includes CCTC's right to pursue its contractual rights in respect of a breach of the payment obligations of all the Defendants.

When evaluating the terms of the Settlement Agreement, the Court first looks at "whether the language of the contract is clear and unambiguous; if it is, the contract will be enforced as written." *Mendenhall v. Tassinari*, 133 Nev. 614, 624–25, 403 P.3d 364, 373 (2017).  The Court "should not interpret a contract so as to make meaningless its provisions," and "[e]very word must be given effect if at all possible." *Id.*  Shiva attempts to make the plain language of the contract meaningless and, through flawed logic, avoid liability for his actions to the detriment of CCTC.  If the Confession of Judgment was the sole remedy for a breach of the Settlement Agreement, why would the other Defendants have payment obligations?  Why would the language regarding additional remedies be included?  The simple answer is that the parties intended to afford two routes of recovery to CCTC: (i) an expedited route of recovery through the Confession of Judgment against Shiva and Capital Pure; and (ii) with regard to the other Defendants, CCTC would have to file a new breach of contract action.   To the extent the Court finds ambiguity regarding this language, CCTC is at least entitled to support its interpretation in discovery, through declarations of counsel and other evidence.  However, CCTC respectfully submits that the language of the Settlement Agreement unambiguously does not provide that the Confession of Judgment is not its sole remedy in respect of a breach of the Settlement Agreement by **any** of the Defendants.  That being the case, Shiva's argument on this issue fails as well.

/ / /

11

**F.      CCTC has Properly Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.**

To state a prima facie claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must show that (1) plaintiff and defendant were parties to a contract; (2) defendant owed a duty of good faith to plaintiff; (3) defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were thus denied. *Perry v. Jordan,* 900 P.2d 335, 338 (1995). An implied covenant of good faith and fair dealing exists in every Nevada contract and essentially forbids arbitrary, unfair acts by one party that disadvantage the other. *Frantz v. Johnson,* 999 P.2d 351, 358 n.4 (2000).

Shiva cites to and relies upon the cases of *Sheppard v. Morgan Keegan & Co.*, 266 P.3d 240, 246 (Nev. 2011), *A.C. Shaw Constr. V. Washoe County*, 784 P.2d 9, 9 (Nev. 1989), and *Perry v. Jordan*, 900 P.2d 335, 338 for his arguments. No case in Nevada under the *Sheppard* citation exists that CCTC could locate, and Defendant grossly misstates the holdings of both *A.C. Shaw* and *Perry*. In *A.C. Shaw*, the Nevada Supreme Court reversed a district court's determination that no implied covenant of good faith and fair dealing existed in a public works construction contract and reaffirmed that the covenant of good faith and fair dealing is implied into every contract. *A.C. Shaw Const., Inc. v. Washoe Cnty.*, 105 Nev. 913, 914, 784 P.2d 9, 9 (1989). In *Perry*, the Nevada Supreme Court affirmed the district court's judgment where it was found that a party was entitled to recover any losses resulting from breach of the implied covenant arising from a confidential relationship, as well as from the breach of contract. *Perry v. Jordan*, 111 Nev. 943, 948, 900 P.2d 335, 338 (1995). Neither of these cases preclude application of the breach of the implied covenant claims in this case, as argued by Shiva.

Furthermore, the claims are not duplicative, as breach of the implied covenant occurs when a party engages in conduct that goes beyond the mere non-performance of contractual obligations and "deliberately countervenes the intention and spirit of the contract". *Morris v. Bank of Am. Nevada*, 886 P.2d 454, 457 (1994) (citing *Hilton Hotels v. Butch Lewis Productions,* 808 P.2d 919, 922–23 (1991)). CCTC has alleged that Defendants have done just that by dissolving Capital Pure

with the intent to avoid paying the settlement amounts.  As set forth in detail in the Complaint, this case involves not just non-performance, but intentional conduct designed to avoid performance by fraudulently transferring assets and continuous attempts to avoid complying with their contractual obligations.  This is the exact type of pervasive misconduct the implied covenant is designed to prevent.

The Complaint specifically alleges that Defendants (1) dissolved Capital Pure shortly after executing the Settlement Agreement, (2) transferred or shifted its ongoing business to DGITK, and (3) took steps to conceal assets and evade their obligations under the Agreement. ECF No. 1, at ¶¶ 28, 33, 34, 45.  These are affirmative acts taken to frustrate the purpose of the contract and deprive Plaintiff of the benefit of its bargain, not simply a failure to perform. Conduct aimed at evading performance and undermining the Settlement Agreement's purpose constitute bad faith and support an independent claim for breach of the implied covenant. Because CCTC alleges deliberate, post-agreement actions designed to defeat the contract's spirit, the implied covenant claim is distinct, viable, and not duplicative of the breach of contract claim.  This is a textbook definition of breach of the implied covenant and, for this reason, Shiva's Motion to Dismiss should be denied.

**G.      CCTC has Properly Requested Declaratory Relief.**

NRS 30.040 provides that "[a]ny person interested under a deed, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

The Confession of Judgment is a contract as referenced in NRS 30.040, and CCTC's rights are affected by the writing as well as a statute, NRS 17.090.  CCTC seeks a judicial declaration regarding the validity and effect of the Confession of Judgment, which falls squarely within the scope of the statute.  Shiva asserts that the Confession of Judgment's validity is undisputed and that this Court lacks jurisdiction to enforce it. ECF No. 4, at 11. However, that argument underscores precisely why declaratory relief is appropriate.  CCTC is entitled to a determination

13

of its rights under the Confession of Judgment, as well as the terms of the Settlement Agreement in general, and it asserts that this Court can interpret and enforce those terms. Shiva cannot simultaneously argue that the Court cannot enforce the Confession of Judgment and that CCTC has no mechanism to determine its rights under it.

### H.    CCTC has Properly Alleged Damages in its Complaint.

Shiva's argument here is unclear. At first, he seems to dispute that CCTC has suffered damages in excess of $75,000. However, the Complaint clearly describes that the total Settlement Agreement was in the amount of $1,336,000, and Defendant is still liable for the remaining $986,000 pursuant to its terms. ECF No. 1 ¶¶ 22, 27; *see also* ECF No 1-1. Therefore, there is no dispute based on the allegations in the Complaint that the amount in controversy exceeds $75,000.

To the extent Shiva is seeking a precise calculation of damages, nowhere does he cite to a rule or case law that this is required in an initial pleading. Defendants will receive a precise damages calculation at the appropriate time under the Local Rules and the Federal Rules of Civil Procedure, such as when CCTC serves its Initial Disclosures under Fed. R. Civ. P. 26.1, or as discovery proceeds and damages are determined prior to trial.

Finally, to address Shiva's argument that CCTC has not properly requested punitive damages in the Complaint, and that they are not appropriately awarded in breach of contract actions, CCTC does not dispute that punitive damages are not permitted on a breach of contract claim as a general matter. This is why CCTC seeks punitive damages for the fraudulent transfer and other intentional misconduct alleged in the Complaint, not for the breach of contract. CCTC has alleged that Defendants dissolved Capital Pure, then transferred its ongoing business to DGITK for the purpose of hindering, delaying and/or defrauding CCTC. This fraud constitutes the type of conduct required by NRS 42.005(1) to seek punitive damages. Accordingly, Shiva's argument on this issue is without merit.

### I.    Defendants' "Joinders" Are Improper Separate Motions, and CCTC Will Respond Accordingly.

On November 18, 2025, Defendants Vikhyat, Hannah, and Shivai each filed a "Joinder" in Shiva's Motion to Dismiss and Memorandum in Support. *See generally* ECF Nos. 4, 5, and 6y

14

(collectively, the "Joinders"). Each of the Joinders presents additional substantive arguments in support of dismissal, in addition to those set forth in Shiva's Motion. In addition to the fact that they cite to no rule that would allow them to file their Joinders in this manner, because they contain additional substance with respect to each of the filing Defendants, they are properly characterized as new motions, and CCTC will file separate oppositions to each within the appropriate timeframes. *See Star Ins. Co. v. Iron Horse Tools, Inc.*, Case No. CV 16-48-BLG-SPW-TJC, 2018 WL 3079493, at \*5 (D. Mont. Feb. 7, 2018) ("Simple 'me too' joinders, like the one Iron Horse initially filed, are not problematic. But if a party seeking to join wants the opportunity to offer substantive argument and evidence, joinder is not the proper vehicle . . . .").

Nonetheless, to the extent the Court finds that the Joinders were properly filed and that a response to the same is due at the same time as this Opposition, CCTC briefly addresses the arguments therein for the purpose of not waiving its arguments. In their Joinders, Defendants Vikhyat and Hannah argue that the Complaint fails to state a claim against them relating to their individual conduct. ECF No. 6, at 4-5; ECF No. 8, at 3. This is simply false. CCTC alleges that Vikhyat and Hannah, as well as Shiva, Chrisman, P.C., and Chrisman, are each liable to pay the Quarterly Payments owed under the Settlement Agreement. ECF No. 1, ¶¶ 37-39. Both of them signed the Settlement Agreement in their individual capacities, and they are included within the definition of "Conter-defendants" in the Settlement Agreement. ECF No. 1-1, at 1, 10. Consistent with this plain language of the Settlement Agreement, and as the district court found in the Prior Action with respect to pre-dismissal obligations under the Settlement Agreement, Hannah and Vikhyat are individually liable to pay the Quarterly Payments. ECF No. 1, ¶¶ 28-29. Their argument on this issue is therefore without merit, as CCTC asserted claims against each of them in an individual capacity.

Shivahi and Hannah also argue that they are not properly joined as Defendants under Nevada law. ECF No. 7, at 4; ECF No. 8, at 5-6. This argument is also without merit. NRS 86.541(2) provides as follows, regarding a party's ability to sue a Nevada limited liability company after its dissolution:

> The manager or managers in office at the time of dissolution . . . are thereafter trustees of the dissolved company, with full power to prosecute and defend suits, actions, proceedings and claims of any kind or character by or against the company.

NRS 86.541(2).  This provision allows a part to sue a dissolved Nevada LLC, by naming its managers as the time of dissolution as trustees on behalf of the company.  CCTC did so in the Complaint.  ECF No. 1, ¶¶ 3-4.

Hannah and Shivahi argue that a person may only be added to a lawsuit as a trustee under NRS 86.541(2), where the person breached their fiduciary duties.  ECF No. 7, at 4; ECF No. 8, at 5.  But this language is nowhere in the statute, nor is it supported by any authority identified by Defendants.  Contrary to their assertion, the claims asserted against Hannah and Shivahi in their capacities as Trustees of Capital Pure are not being asserted to establish personal liability against them.  While CCTC does have claims against Hannah in a personal capacity, its claims against Hannah and Shivahi as Trustees of Capital Pure are properly stated under NRS 86.541(2), which allows a party to assert claims against managers of a company at the time of its dissolution, after the dissolution occurs.  Any other result would allow the Defendants to get away with their fraudulent scheme of dissolving Capital Pure for the purpose of escaping liability.

Ironically, the next argument made in the Joinders is that CCTC improperly seeks a duplicate recovery.  In this argument, Defendants concede that "[t]he proper remedy [against them] would be a joint judgment against all Counter-defendants for the Settlement Amount."  ECF No. 6, at 7; ECF No. 8, at 7.  This is exactly what CCTC seeks.  CCTC is undoubtedly permitted to seek this remedy, and to alternatively seek entry of the Confession of Judgment against Shiva and Capital Pure (which would not affect the other Defendants with contractual liability under the Settlement Agreement).  Therefore, the relief sought in the Complaint is appropriate.

Finally, Defendants argue that the fraudulent transfer claims fail against each of them.  But as set forth above, CCTC has satisfied the pleadings requirements associated with NRCP 9(b), to the extent they apply to this claim.  CCTC has alleged the Defendants engaged in a scheme to defraud CCTC, including by transferring the assets held by Capital Pure to themselves.  ECF No. 1, ¶ 51.  At this stage, because information regarding how and where the funds and assets were

transferred, i.e., to which Defendants, is within the sole control of Defendants, themselves, CCTC is only required to allege the facts set forth in the Complaint. The remaining details will be revealed in discovery, at which time CCTC can more accurately assign and prove liability in connection with its claim. At this juncture, however, and as set forth in *Neubronner v. Milken*, 6 F.3d at 672, CCTC has properly stated its claim for fraudulent transfer against the Defendants.

### J.      To the Extent the Court Is Inclined to Grant the Motion in any Part, It Should Grant CCTC Leave to Cure any Deficiencies.

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)) (internal quotations omitted). If the Court is inclined to dismiss any portion of the Complaint, it should grant CCTC leave to amend the Complaint to include any facts the Court determines are missing in connection with CCTC's claims. As the Complaint is CCTC's initial pleading in this matter, such relief would be consistent with the Rules of Civil Procedure, and in the interests of justice and the Court's interest in ruling on the merits of this case.

/ / /

/ / /

/ / /

## IV.    CONCLUSION

In light of the above, the Court should deny Shiva's Motion to Dismiss in its entirety.  In the event the Court is inclined to grant any portion of the Motion or the Joinders, however, the Court should grant CCTC leave to amend its Complaint, to cure any pleadings deficiencies in the Complaint.

Dated this 28th day of November, 2025.

SKLAR WILLIAMS PLLC

*/s/ David B. Barney*_____
Stephen R. Hackett, Esq.
Nevada Bar No. 5010
David B. Barney, Esq.
Nevada Bar No. 14681
410 South Rampart Blvd, Suite 350
Las Vegas, NV 89145
*Attorneys for Plaintiff*
*CC Technology Corporation*

18

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 28th day of November, 2025, a true and correct copy of the above and foregoing **PLAINTIFF CC TECHNOLOGY CORPORATION'S OPPOSITION TO DEFENDANT SHIVA PRAKASH'S MOTION TO DISMISS ENTIRE ACTION WITH PREJUDICE** was filed electronically with the Clerk of the Court by submission to the electronic filing and service system (CM/ECF) at the United States District Court, District of Nevada.  CM/ECF will provide copies to all parties and counsel of record registered to receive CM/ECF notification.

*/s/ David B. Barney*_____
An employee of Sklar Williams PLLC