Stephen R. Hackett, Esq.
Nevada Bar No.: 5010
David B. Barney, Esq.
Nevada Bar No.: 14681
SKLAR WILLIAMS PLLC
410 South Rampart Boulevard, Suite 350
Las Vegas, Nevada 89145
Telephone: (702) 360-6000
Facsimile:  (702) 360-0000
Email: shackett@sklar-law.com
        dbarney@sklar-law.com
*Attorneys for Plaintiff*
*CC Technology Corporation*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CC TECHNOLOGY CORPORATION, a Colorado corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHIVA PRAKASH, an individual; HANNAH DAWN PRAKASH, in an individual capacity and as Trustee of Capital Pure Assets, Ltd, a dissolved Nevada limited liability company; SHIVAHI PRAKASH, as Trustee of Capital Pure Assets, LTD, a dissolved Nevada limited liability company; VIKHYAT PRAKASH, an individual; DGITK LLC, a Delaware limited liability company; JAMES CHRISMAN, P.C., a Nevada professional corporation; JAMES P. CHRISMAN, an individual; DOES 1 through 10, inclusive; and ROE ENTITIES I through X, inclusive,<br><br>Defendants. | Case No. 2:25-cv-02123-JAD-BNW<br><br><br>**PLAINTIFF CC TECHNOLOGY CORPORATION'S OPPOSITION TO DEFENDANTS VIKHYAT PRAKASH, SHIVAHI PRAKASH AND HANNAH DAWN PRAKASH'S  JOINDERS TO MOTION TO DISMISS** |

Plaintiff CC Technology Corporation (hereinafter "Plaintiff" or "CCTC"), by and through its counsel of record, the law firm of Sklar Williams PLLC, respectfully submits this Opposition to Defendants Vikhyat Prakash, Shivahi Prakash, and Hannah Dawn Prakash's Joinders to Motion to Dismiss.  ECF Nos. 6, 7, 8.

/ / /

1

This Opposition is made based upon the attached Memorandum of Points and Authorities, all of the papers and pleadings on file herein, and any oral argument the Court may allow at the hearing on this matter.

Dated this 2nd day of December, 2025.

SKLAR WILLIAMS PLLC

*/s/ David B. Barney*
Stephen R. Hackett, Esq.
Nevada Bar No. 5010
David B. Barney, Esq.
Nevada Bar No. 14681
410 South Rampart Blvd, Suite 350
Las Vegas, NV 89145
*Attorneys for Plaintiff*
*CC Technology Corporation*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In or around May 2023, Defendants approached CCTC and represented that they operated a business named Capital Pure Assets, Ltd. ("Capital Pure"), which purportedly had connections to the financial industry and access to substantial funds in India.  ECF No. 1, ¶ 13. Defendants offered to CCTC a $50 million Standby Letter of Credit ("SBLC") if CCTC first deposited $336,000 into an escrow account held by Defendants James P. Chrisman ("Chrisman") and James Chrisman, P.C. ("Chrisman, P.C.").  *Id*. These terms were formalized in a written contract, but Capital Pure failed to perform and defaulted.  *Id*. ¶¶ 14–17.

CCTC later discovered that the SBLC offering was part of a fraudulent scheme to scam CCTC out of the $336,000.  *Id*. ¶ 12.  Litigation followed in the case styled *Capital Pure Assets, Ltd. v. CC Technology Corporation*, Case No. 2:24-cv-00680 in the United State District Court for the District of Nevada (the "Prior Action"), in which CCTC brought counterclaims against Capital Pure, Shiva Prakash ("Shiva"), Hannah Dawn Prakash ("Hannah"), Vikhyat Prakash ("Vikhyat"), Chrisman, and Chrisman, P.C. *Id*. ¶¶ 18–19. The parties resolved the Prior Action through a Settlement Agreement executed by all the parties on February 19, 2025 (the "Settlement Agreement").  *Id*. ¶¶ 22–24.

Defendants then immediately breached the Settlement Agreement by refusing to pay and, more significantly, by dissolving Capital Pure, transferring its assets, and forming DGITK LLC ("DGITK") to continue the same business.  *Id*. ¶¶ 33–34, 37–63. CCTC brings this action to enforce the Settlement Agreement and to obtain relief for Defendants' breach of the Settlement Agreement and fraudulent transfer of assets.

On November 14, 2025, Shiva filed a Motion to Dismiss Plaintiff's Complaint.  ECF No. 4. On November 18, 2025, Defendants Vikhyat, Shivahi Prakash ("Shivahi"), and Hannah each filed Joinders, but included additional arguments in support of dismissal (collectively, the "Joinders"). ECF Nos. 6, 7, 8. CCTC submits this Opposition to the Joinders filed by Defendants Vikhyat, Hannah, and Shivahi (collectively "Defendants").

Throughout these Joinders, Defendants attempt to distance themselves from the Settlement

Agreement they signed, from the obligations of the dissolved entity they managed and controlled, and from the fraudulent transfer scheme they collectively carried out.  But the allegations of the Complaint are clear and must be accepted as true for purposes of this Opposition: Defendants jointly agreed to pay the Settlement Amount, then dissolved Capital Pure, transferred its assets to a newly formed entity, DGITK—to continue the same business using the same location and the same individuals—while refusing to pay what they owed, all in an intentional effort to avoid their obligations under the Settlement Agreement and defraud their creditors, including CCTC.

The arguments in the Joinders fail because they rely upon mischaracterizations of the pleadings, citations to fake or non-existent case law, and incorrect interpretations of Nevada law. Defendants make poorly reasoned arguments relating to Res Judicata, and claim that suing all of them for breach of the same contract will result in a duplicative recovery, despite the fact that they all are jointly and severally liable and that the relief sought by CCTC is not duplicative.

Defendants then attempt to avoid responsibility by making factual allegations that they have nothing to do with Capital Pure or DGITK, contrary to the allegations in the pleadings, in a familiar attempt to continue avoiding liability. At this stage, however, the allegations of the Complaint must be accepted as true, and each Defendant's attempt to avoid responsibility through dissolution, re-formation, or role-shifting is unavailing. CCTC respectfully requests that the Court deny all Defendants' Joinders and the Motions to Dismiss in their entirety.

## II.    LEGAL STANDARD

Rule 8(a)(2) requires that a plaintiff's complaint contain only "a short and plain statement of the claim showing that the pleader is entitled to relief in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2).  Fed. R. Civ. P. 12(b)(6) only allows for dismissal where there is a "failure to state a claim upon which relief can be granted." *Id.* In order to avoid dismissal, a claim need only "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 662 (2009).  "Dismissal is appropriate **only** when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests." *Wheeler v. Terrible Herbst Oil Co.,* No. 2:10-cv-00866-GMN-NJK, 2013 WL 3974887, at *3 (D. Nev. July

30, 2013) (bold added).

In deciding a Rule 12(b)(6) motion to dismiss, "all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff." *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 936 (9th Cir. 2008). The court must examine the claim to determine whether it contains sufficient factual allegations "to raise a right to relief above the speculative level." *Ashcroft*, 556 U.S. at 662 (2009). The issue is not whether the plaintiff will ultimately prevail, but whether it has properly stated a claim for which it is entitled to offer evidence to support its claims. *Scheuer v. Rhodes,* 416 U.S. 232, 233 (1974). Moreover, it is well established that, in passing on a motion to dismiss for failure to state a claim for relief, the allegations of a complaint should be accepted as true and construed favorably to the pleader. *Id.*

With regard to a claim that implicates Rule 9(b), that rule requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) ensures that defendants are given proper notice of any allegations of fraud so they can defend against the charge, while also preventing the filing of a complaint as a baseless pretext for the discovery of unknown wrongs. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Further, plaintiffs must set forth not only the neutral facts necessary to identify the transaction, but also "what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citing *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). In short, the plaintiff "must set forth an explanation as to why the statement or omission complained of was false or misleading." *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994). Plaintiff's Complaint satisfies these standards.

## III.   ARGUMENT

As provided above and in CCTC's Opposition to Shiva's Motion to Dismiss (ECF No. 12), Defendants Vikhyat, Shivahi, and Hannah's "Joinders" are not actually joinders, but present additional substantive arguments and are essentially disguised additional Motions to Dismiss. *See Star Ins. Co. v. Iron Horse Tools, Inc.*, Case No. CV 16-48-BLG-SPW-TJC, 2018 WL 3079493, at *5 (D. Mont. Feb. 7, 2018) ("Simple 'me too' joinders, like the one Iron Horse initially filed,

are not problematic.  But if a party seeking to join wants the opportunity to offer substantive argument and evidence, joinder is not the proper vehicle . . . .").  This is improper for Joinders, and the Court should disregard the alleged "Joinders" for this reason alone.  However, to the extent the Court does consider the additional arguments made in Defendants' purported Joinders, CCTC responds to them herein.

Most of the Joinders contain the same repetitive arguments.  Therefore, for the sake of efficiency and the Court's convenience, Plaintiff addresses all of the arguments in this joint Opposition.  To the extent the Joinders incorporate the arguments made in Shiva's Motion to Dismiss (ECF No. 4), CCTC incorporates by reference its arguments made in its Opposition to Shiva's Motion to Dismiss (ECF No 12).

### A.      Res Judicata does not Bar CCTC's Claims.

Defendants' Joinders all raise the issue of Res Judicata, in an attempt to revive Shiva's identical argument from the Motion to Dismiss. This argument is meritless, however, because as explained in CCTC's incorporated Opposition to Shiva's Motion to Dismiss, this action arises out of the breach of the Settlement Agreement and the misconduct surrounding the dissolution of Capital Pure and Defendants' fraudulent transfers, not out of the same nucleus of operative facts that underlay the Prior Action.

"Res judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (internal citations and quotations omitted).  No identity of claims exists here.

Defendants also claim that the language of the Settlement Agreement releases them from the claims made in the present action.  As support, Defendants cite a ***portion*** of the Settlement Agreement attempting to argue that it was a broad release which releases Defendants from any and all obligations forever.  First, Defendants miscite the language of the Settlement Agreement.  ECF No. 6, at 8.  Second, the beginning of the paragraph that Defendants reference clearly explains why they are incorrect.  The relevant portion is provided below:

/ / /

> **Upon the Effective Date, and except as to any payments, duties or obligations created by this Agreement**, the Parties hereby agree and acknowledge satisfaction and full mutual general release and discharge of each of them . . . .

ECF No. 1-1 at 5, ¶ 3 (bold added).

The Settlement Agreement only releases prior claims upon the Effective Date,[1] and it does not release any future claims or claims arising out of the breach of the Settlement Agreement. In fact, it specifically carves out from the release language any claims, "as to any payments, duties, or obligations created by this Agreement." *Id.* This matter specifically arises out of the payments, duties, and obligations created by the Settlement Agreement and, therefore, the claims made in this case were not released.

Put simply, Res Judicata does not apply to claims arising from conduct that occurred after the events that gave rise to the Prior Action. Therefore, the plain language of the Settlement Agreement and the proper understanding of Res Judicata demonstrate that Defendants' arguments are without merit.

**B.    Claims Against Trustees of a Dissolved LLC are Proper Under Nevada Law.**

Defendants claim that CCTC has failed to state a claim against Shivahi and Hannah in their capacities as trustees of Capital Pure. Shivahi and Hannah claim that because they did not sign the Settlement Agreement as trustees and did not agree to be trustees of Capital Pure, they cannot be liable under this theory. Defendants are incorrect as a matter of law.

NRS 86.505 provides that the "dissolution of a limited-liability company does not impair any remedy or cause of action available to or against it or its managers or members commenced, within 2 years after the effective date of the articles of dissolution." NRS 86.541(2) further provides that:

> The manager or managers in office at the time of dissolution . . . are thereafter trustees of the dissolved company, with full power to prosecute and defend suits, actions, proceedings and claims of any kind or character by or against the company.

NRS 86.541(2).

---

[1]    February 19, 2025, the date the last party executed the Settlement Agreement.

Shivahi and Hannah both acknowledge in sworn declarations that they were managers of Capital Pure at the time of its dissolution.  ECF No. 7, at 14, ECF No. 8, at 8.  Capital Pure was dissolved as of April 10, 2025.  ECF No 1, ¶ 4.

Under Nevada law, a party may sue a dissolved Nevada LLC, by naming its managers at the time of dissolution as trustees on behalf of the company.  NRS 86.505, NRS 86.541(2). This is exactly what CCTC did in this present matter.  ECF No. 1, ¶¶ 3-4. Shivahi and Hannah are named in their capacities as former managers of Capital Pure, and CCTC's claims are made in accordance with the above-referenced statutes.  CCTC does not seek to prove any alter ego theories or pierce any corporate veils in the Complaint.  Therefore, any arguments regarding the elements of breach of fiduciary duty or alter ego claims are irrelevant and not applicable to CCTC's claims. As a matter of Nevada law, Shivahi and Hannah are trustees of Capital Pure and are proper parties to this lawsuit.

Shivahi and Hannah's citations to *Giuliano v. Giuliano*, 115 Cal. App. 4th 1542, 1548 (2007),[2] California Corporation Code § 2011,[3] and *Penasquitos, Inc. v. Superior Court*, 53 Cal. App. 4th 1180, 1190 (1997)[4] are all false because these cases are non-existent, and even if they did exist, they would be irrelevant as Capital Pure was a Nevada limited liability company and thus NRS Chapter 86 governs the procedures following its dissolution, not California law.

Shivahi and Hannah further attempt to argue that they never agreed to be a trustee of Capital Pure for the purposes of the Settlement Agreement, but again this is irrelevant.  As a matter of law, NRS Chapter 86 provides a mechanism in which a party can maintain an action against a dissolved Nevada limited liability company, i.e., by naming its managers at the time of dissolution as

---

[2]   This appears to be another false citation to a case that does not exist or appear as cited in the California Appellate Reports.

[3]   The quotation provided by Shivahi does not exist in the cited section and is not applicable as Nevada law governs the dissolution of Capital Pure, a Nevada entity.

[4]   This is yet another false citation by Shivahi.  No case under that name and citation exists. There is a case under a different citation of *Penasquitos, Inc. v. Superior Ct.*, 53 Cal. 3d 1180, 812 P.2d 154 (1991), which does not contain the quote that Shivahi provides and cites to in her Joinder.

trustees. Any other result would allow parties to get away with any liabilities or obligations by simply dissolving a Nevada LLC and moving its assets while abandoning its liabilities—exactly what the Defendants are attempting to do here. All obligations belonging to Capital Pure are now held by the managers of Capital Pure in their capacities as trustees of the dissolved company pursuant to NRS 86.541(2), including Capital Pure's obligations under the Settlement Agreement, and its actions in the fraudulent transfer of its assets before payment of its creditors, such as CCTC.

**C.      There is No Risk of Duplicative Recovery, as Plaintiff Seeks Joint and Several Liability Against Defendants.**

The Settlement Agreement imposes obligations on all Defendants to jointly pay a total sum. ECF No. 1-1, at 3. It is a basic principle of contract law that a contract can impose obligations on multiple parties and that such a contract can be enforced jointly and severally against all parties bound. *See, e.g.,* 12 Williston on Contracts, § 36:1 (4th ed. 2012) ("[A] joint and several contract is a contract made by the promisee with each promisor and a joint contract made with all the promisors, so that parties having a joint and several obligation are bound jointly as one party, and also severally as separate parties at the same time."). CCTC is expressly seeking **joint and several** liability against all Defendants. ECF No. 1, at 12. These are not separate actions seeking duplicative recoveries, as Defendants claim, but rather a single Complaint seeking a joint and several judgment for the singular judgment amount, and therefore there is no danger of duplicative recovery.

**D.      Defendant Vikhyat's Additional Arguments.**

**1.      *CCTC is not seeking to enforce the Confession of Judgment against Vikhyat***

Defendant Vikhyat appears to argue that since he did not sign a Confession of Judgment, he has different contractual rights and obligations, and therefore this action is improper. First, CCTC is not looking to enforce the Confession of Judgment against Vikhyat. CCTC has sued Vikhyat for a breach of the Settlement Agreement and additional intentional misconduct surrounding the fraudulent transfer of assets and dissolution of Capital Pure. *See generally*, ECF No 1.

9

As admitted in Vikhyat's Declaration, he is a signatory to the Settlement Agreement. ECF No 6, at 11. Vikhyat seems to acknowledge that an action for breach of contract is the appropriate remedy, but then claims that this case should have been filed in state court. ECF No 6, at 3. It appears that Vikhyat is attempting to make a lack of subject matter jurisdiction argument, but this argument is without merit as explained in CCTC's previous Opposition.

As explained in Plaintiff's previous Opposition (ECF No. 12), CCTC is a citizen of Colorado and Defendants are all citizens of Nevada, with DGITK also being a Delaware entity. ECF No. 1, ¶¶ 1-8. Complete diversity of citizenship exists, and the amount in controversy is undisputedly over $75,000. ECF No. 1, ¶ 10. Accordingly, independent subject matter jurisdiction over this case exists under to 28 U.S.C. § 1332. In addition, the clear language of the Settlement Agreement provides a consent by the parties to the application of Nevada law and states, "[t]he United States District Court for the District of Nevada shall have and maintain exclusive jurisdiction over any claims, lawsuits and/or disputes between the Parties arising out of or relating to the subject matter of this Agreement." ECF No. 1-1, ¶ 8.

Because an independent basis for subject matter jurisdiction exists for these claims under to 28 U.S.C. § 1332, and the parties agreed to venue in this Court under the terms of the Settlement Agreement itself, this Court has subject matter jurisdiction over all of CCTC's claims and venue is proper in this court, not Nevada state court.

### 2. *Vikhyat is a Signatory to the Settlement Agreement and has Breached the Agreement*

Next, Vikhyat seems to argue that he can avoid liability for his breach of the Settlement Agreement because it does not specifically define which portion of the payment he is required to make. This is not how contracts work. If this were the law, almost every single contract against multiple parties would be unenforceable. Vikhyat signed the Settlement Agreement, agreeing to be liable for the total Settlement Amount under the clear and unambiguous terms of the parties' agreement, not some undefined severable portion that Vikhyat argues must exist. ECF No. 1-1 ¶ 2. Vikhyat signed the Settlement Agreement in his individual capacity and is included within the definition of "Counter-defendants" in the Settlement Agreement. ECF No. 1-1, at 1, 10. He

obligated himself to pay the entire settlement amount to CCTC, not some undefined portion of the total settlement amount.

The Settlement Agreement imposes obligations on all Defendants to jointly pay a total sum certain. *Id* at 3. In fact, Vikhyat seems to acknowledge that the Settlement Agreement requires all of them to jointly make quarterly payments. ECF No. 6 at 4. As stated in the Complaint, CCTC is seeking a joint and several judgment for the entire settlement amount remaining against all Defendants. ECF No. 1 at 12. The bottom line is that all Defendants were required to make this payment, regardless of whether it was internally divided between them, and CCTC has not received the payment. Therefore, all Defendants are in breach, and all Defendants are liable for breach of contract as well as the misconduct surrounding the breach.

Contracting parties cannot evade liability simply because they had an internal allocation of responsibility that was not expressly defined and set forth in the contract. In this case, the Settlement Agreement had no such allocation and all Defendnats were individually bound to satisfy the entire settlement amount. This is precisely why joint and several liability applies here, as all Defendants are jointly and severally liable to pay the amounts prescribed in the Settlement Agreement to CCTC. The allegations of the Complaint establish that a valid contract exists, it was signed by Vikhyat, and he has breached it by not paying funds pursuant to the quarterly payments obligations set forth therein. ECF No. 1, ¶¶ 28-29. This is sufficient to state a claim for breach of contract against Vikhyat.

### 3. *CCTC Has Stated a Claim for Fraudulent Transfer Against Vikhyat*

Vikhyat next points to Paragraph 51 of Plaintiff's Complaint to claim there are no allegations asserting that he was involved in the fraudulent transfer. ECF No. 6 at 5. However, Vikhyat ignores Paragraphs 33-34, where Plaintiff specifically alleges that all Defendants, including Vikhkyat, were involved in the fraudulent transfer and the organization of DGITK. ECF No. 1, ¶¶ 33-34. Furthermore, CCTC alleges that Capital Pure's assets were transferred to Defendants, including Vikhyat. *Id* ¶¶ 51-52. These allegations are sufficient to state a fraudulent transfer claim against Vikhyat.

Vikhyat regurgitates Shiva's particularity arguments of Fed. R. Civ. P. 9(b) for fraudulent

11

transfers. ECF No 6, at 5. For support, Vikhyat cites to the same two non-existent cases of *Decker v. Tramiel*, 748 F. Supp. 1533, 1540 (C.D. Cal. 1990) and *Gray v. Genlyte Grp., Inc.,* 289 F.R.D. 519, 530 (C.D. Cal. 2013). As explained in the incorporated prior Opposition (ECF No. 12), CCTC could not locate these cases as cited and is not aware of any authority holding that the Rule 9(b) pleading standards apply to all manner of statutory fraudulent transfer claims under Nevada law. However, even assuming Rule 9(b)'s standards for pleading fraud apply, the Complaint in this case satisfies them.

Vikhyat attempts to argue the Rule 9(b) standards require the fraudulent transfer claims to provide an exact description of the assets transferred, the consideration he received, and how the transfers were made to him, with the intent to defraud creditors, in order to state a claim. As argued at length in the prior Opposition to Shiva's Motion to Dismiss, this is not the standard when "the facts constituting the circumstance of the alleged fraud are peculiarly within the defendant's knowledge or are readily obtainable by him." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (citing *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)); *Englewood Lending Inc. v. G&G Coachella Invs., LLC*, 2009 WL 10670409, at *5–6 (C.D. Cal., July 6, 2009) (relaxing Rule 9(b)'s specificity requirements in the context of a fraudulent transfer claim "because the specific information relating to the purported fraudulent transfer lies" with the defendant).

As stated in the prior Opposition, Plaintiff has set forth the who, what, where, when, and how relating to the fraudulent transfer, which is all that is required under Rule 9(b) at this time. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Plaintiff alleges that on April 10, 2025, Defendants dissolved Capital Pure, while still representing that it was engaged in business and soliciting investments, and formed DGITK four days later to run the same business using the same address in Nevada, in an effort to defraud CCTC as a creditor and with the specific intent to evade liability under the Settlement Agreement. ECF No. 1, ¶ 33-34. Rule 9(b) states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Complaint satisfies Rule 9(b) as to Vikhyat.

Vikhyat then claims that NRS 112.200 precludes liability since there are no allegations that

he received any assets from Capital Pure. NRS 112.200 describes the time at which a transfer or an obligation is deemed made or incurred for fraudulent transfer claims. It does not reference transferee liability as Vikhyat claims, and furthermore, this argument is factually incorrect as the Complaint does specifically allege that Vikhyat received assets from Capital Pure.  ECF No. 1 at ¶ 51-52.

Vikhyat's assertion that he is being sued merely because of a familial relationship also is factually incorrect and directly contradicted by the Complaint.  CCTC alleges specific acts by Vikhyat in connection with the dissolution of Capital Pure and the subsequent formation of DGITK four days later to continue the same business and evade his obligations under the Settlement Agreement. ECF No. 1 ¶¶ 33–34.  The Complaint further alleges that Capital Pure's assets were transferred to the Defendants, including Vikhyat. *Id* at ¶¶ 51–52. These are individualized allegations of participation in the fraudulent transfer scheme, and not generic references based on familial relationships with other defendants. Vikhyat's "Familial Relationship" argument is a red herring and ignores the explicit factual allegations describing his role and involvement in the fraudulent transfer scheme.  Because there are factual allegations in the Complaint that specifically relate to Vikhyat, CCTC has adequately stated a claim for relief against Vikhyat for fraudulent transfer, and this Court should deny his Joinder.

**E.      Defendant Shivahi's Additional Arguments**

**1.      *Plaintiff has stated a Claim for Fraudulent Transfer against Shivahi***

CCTC has asserted claims against Shivahi in her statutory capacity as a trustee of Capital Pure, not individually.  For the reasons stated above and in the prior Opposition, CCTC has set forth the who, what, where, when, and how relating to the fraudulent transfer, which is all that is required under Rule 9(b) at this time. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

To the extent Shivahi states that there are no allegations contained against her individually for either the fraudulent transfer or for declaratory relief, this is again because she is conflating her liability as a trustee for the dissolved entity and her individual capacity, as this claim is brought against her in her capacity as a trustee of Capital Pure, for the actions and obligations of the

company.

### F.   Defendant Hannah's Additional Arguments

#### 1.   *Hannah is a Signatory to the Settlement Agreement in her Individual Capacity and has Breached the Agreement*

Similar to Vikhyat, Hannah argues that since the amount owed by Hannah individually is not defined by the Settlement Agreement, CCTC fails to state a claim against her for the breach. As argued above, the Settlement Agreement imposes obligations and liabilities on all the signatories jointly and severally, in accordance with the express language of the document, and Hannah agreed to be liable for the total Settlement Amount.  ECF No. 1-1 ¶ 2.  There is no legitimate argument that Hannah can make regarding her not knowing the amount owed by her individually, because it is not severable from the total Settlement Amount.

Like Vikhyat, Hannah signed the Settlement Agreement in her individual capacity and is included within the definition of "Counter-defendants" in the Settlement Agreement.  ECF No. 1-1, at 1, 11. Hannah therefore agreed to be liable for the entire Settlement Amount.  The Complaint sets forth exactly the amounts owed, and to date, Plaintiff has not been paid under the terms of the Settlement Agreement. This is the specific breach by Hannah, and the allegations in the Complaint are sufficient to advise her of the amounts allegedly owed by her and to state a claim against her for breach of contract.

#### 2.   *Plaintiffs have stated a Claim for Fraudulent Transfer against Hannah*

As set forth herein and in the prior Opposition, Plaintiff has adequately pled a claim for fraudulent transfer under to the Rule 9(b) standards, even if they are applicable. There are allegations relating specifically to Hannah and her involvement in the fraudulent scheme. *See* ECF No. 1 ¶ 33-34, 51-52.  Plaintiff alleges that Capital Pure transferred assets to the Defendants, which includes Hannah, and that she was a part of this scheme to defraud creditors, including CCTC, with the specific intent to avoid payment under the Settlement Agreement. *Id.*  Plaintiff has alleged Hannah's specific involvement in the dissolution of Capital Pure, the creation of DGITK, and the transfer of assets to it, and therefore Hannah's Joinder should be denied.

At the pleading stage, CCTC is not required to identify the specific bank account involved

14

or the specific dollar amount or piece of property each participant in a fraudulent transfer scheme personally received, because those facts are "peculiarly within the defendant's knowledge." *Neubronner v. Milken*, 6 F.3d at 672.  CCTC has made allegations based on its knowledge at this time which include that Hannah acted as a participant in dissolving Capital Pure and in forming DGITK to fraudulently transfer the assets of Capital Pure and to continue the identical business using the same address within days of the dissolution, all with the intent to avoid obligations under the Settlement Agreement.  *Id*. ¶¶ 33–34. These allegations sufficiently tie Hannah to the fraudulent transfer scheme, and her argument that she must be specifically identified as the transferee of a particular asset or amount of money is contrary to fraudulent transfer law and Rule 9(b)'s relaxed pleading standard in this context.

### 3. *Hannah's Trustee Capacity Does Not Conflict with the Other Claims*

Hannah attempts to conflate the capacities in which the claims are brought and argues that claims cannot be brought against her both individually and as a trustee. Hannah is named as a trustee of Capital Pure, a dissolved entity she was a manager of, and these claims seek relief for Capital Pure's obligations owed to CCTC, not against Hannah individually. There are no allegations or attempts to plead alter ego liability now, as CCTC has separate claims against Hannah individually for breach of the Settlement Agreement, which she signed in a personal capacity.

Hannah circularly argues that if there was a fraudulent transfer, CCTC cannot go after Hannah individually, and as a trustee of Capital Pure, because there are no assets to satisfy a judgment.  ECF No. 8, at 5. First, as no discovery has been conducted yet, it is unclear the exact amount of assets that Capital Pure had, or what assets were transferred to each Defendant, or what assets might remain.  These are issues to be determined in discovery, but all parties are necessary to the action, and in the absence of all parties, this court cannot accord complete relief to Plaintiff. *See* Fed R. Civ. P. 19.  Second, the fact that certain claims are made against Hannah as a trustee of Capital Pure does not affect the fact that other claims were made against her individually, for obligations she took on personally.  In no manner do Hannah's arguments result in dismissal of any of the claims against her at this point.  Hannah's Joinder should be denied in its entirety.

15

IV.    CONCLUSION

For the foregoing reasons, Defendants' Joinders are procedurally improper and substantively deficient.  Each Joinder raises new arguments that all fail as a matter of law, and the Complaint states valid claims against each Defendant. Accordingly, the Court should deny the Joinders and the associated Motions to Dismiss in their entirety.

Dated this 2nd day of December, 2025.

SKLAR WILLIAMS PLLC

*/s/ David B. Barney*
Stephen R. Hackett, Esq.
Nevada Bar No. 5010
David B. Barney, Esq.
Nevada Bar No. 14681
410 South Rampart Blvd, Suite 350
Las Vegas, NV 89145
*Attorneys for Plaintiff*
*CC Technology Corporation*

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 2nd day of December, 2025, a true and correct copy of the above and foregoing **PLAINTIFF CC TECHNOLOGY CORPORATION'S OPPOSITION TO DEFENDANTS VIKHYAT PRAKASH, SHIVAHI PRAKASH AND HANNAH DAWN PRAKASH'S JOINDERS TO MOTION TO DISMISS** was filed electronically with the Clerk of the Court by submission to the electronic filing and service system (CM/ECF) at the United States District Court, District of Nevada.  CM/ECF will provide copies to all parties and counsel of record registered to receive CM/ECF notification.

 */s/ Jessica Uriostegui*
An employee of Sklar Williams PLLC